S94A1767, S94A1768. BARKSDALE v. THE STATE (two cases).
(453 SE2d 2)

SEARS, Justice.

The appellant, Chad Barksdale, was convicted of the armed robbery and murder of Eric Martin. The trial court sentenced Barksdale to two consecutive life sentences. In Case No. S94A1767, Barksdale appeals from his convictions, and, for the reasons that follow, we reverse. In Case No. S94A1768, Barksdale appeals from the trial court's award of attorney fees, and we affirm that appeal.[1]

---

[1] The crimes occurred on January 25, 1993. Barksdale was indicted during the March 1993 term of the local grand jury. He was tried and found guilty on February 2-10, 1994, and

1. Viewing the evidence in a light most favorable to the verdict, we conclude that it was sufficient to support Barksdale's convictions, as it would have authorized a rational trier of fact to find beyond a reasonable doubt that Barksdale and co-indictees, Sherrod Williams, and Rene Bundrage, drove the victim to a dark, secluded area, and that Barksdale and Bundrage shot the victim and then stole money and drugs from him. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[2]

2. Before Barksdale's trial, Sherrod Williams pled guilty to armed robbery and the murder charge against him was dismissed. The state called Williams as a witness, but he refused to testify. Over Barksdale's objection, the trial court admitted into evidence a prior, videotaped statement that Williams made while in police custody. Barksdale contends that the trial court incorrectly admitted the videotape. We agree, conclude that the error was harmful, and reverse.

At the time of Barksdale's trial, Williams was serving time for his armed robbery conviction pursuant to his plea bargain with the state. After Williams refused to testify, the state asked him why he was doing so. Williams stated that he refused to testify because he felt like his life was in danger. He then stated that the lives of his family members were in danger and that he had "to live in Sparta." After a discussion between counsel and the trial court, the court ruled that Williams did not have any valid Fifth Amendment privilege to assert, and the court ordered Williams to testify. Williams again refused to testify, stating that "I ain't fixing to get my life in trouble and my family. So I refuse to testify. Y'all just going to have to do what y'all got to do. I refuse to testify." The prosecutor then asked the court to hold Williams in contempt. The trial court, however, held the contempt issue in abeyance. The state then moved to admit Williams's prior videotaped statement, but the court agreed to give everyone time to research the issue before ruling on it.

The next day, the state again called Williams to the stand. The prosecutor asked Williams if he still refused to testify even though the trial court might punish him by imprisonment. He said he still refused to testify and was excused from the courtroom.

Thereafter, the prosecutor contended that the videotape was admissible as a prior inconsistent statement under the principles of *Gib-*

sentenced on February 11, 1994. Barksdale filed his notice of appeal of his murder conviction on March 9, 1994, and his notice of appeal from the award of attorney fees on May 20, 1994. The court reporter certified the transcript on July 28, 1994. The cases were docketed in this court on August 12, 1994, and were orally argued on November 7, 1994.

[2] In addressing the sufficiency of the evidence, we must consider the evidence that we determine in Division 2 of this opinion, infra, was improperly admitted. *Wilson v. State*, 254 Ga. 473, 475, n. 2 (330 SE2d 364) (1985); *Lewis v. State*, 248 Ga. 566 (1) (285 SE2d 179) (1981).

*bons v. State,* 248 Ga. 858 (286 SE2d 717) (1982), and *Cuzzort v. State,* 254 Ga. 745 (334 SE2d 661) (1985). In this regard, the prosecutor contended that Williams's refusal to testify made his prior statement inconsistent with his in-court testimony. The prosecutor also contended that the videotape was admissible under the necessity exception to the hearsay rule because Williams was "as unavailable as though he were dead" and because there were sufficient indicia of reliability. Barksdale objected that the videotaped statement was not admissible under either exception to the hearsay rule, that the state was not entitled to "use his out-of-court [statement] in lieu of his testimony before this Court," and that to permit the state to play the videotape of it would violate his right of confrontation.

The trial court ruled that the statement was admissible under the rationale of *Gibbons* and *Cuzzort.*

The state then called Williams to the witness stand and played the videotape as his direct testimony. At the conclusion of the videotape, the prosecutor announced that that concluded its direct examination. The court then stated that the defense could cross-examine. The defense attorney asked Williams if he were going to continue to refuse to answer questions. Williams stated that he was, and the defense attorney indicated that he had nothing further to ask.

(a) We agree with Barksdale's assertion that Williams's statement was inadmissible as a prior inconsistent statement under *Gibbons v. State,* 248 Ga., supra. This issue is controlled favorably to Barksdale by *Thornton v. State,* 264 Ga. 563 (449 SE2d 98) (1994). In that case, the state played a videotape of a witness's out-of-court statement when the witness had not given testimony in court. The witness was then subjected to cross-examination by the defendant. We held that the videotape was inadmissible

> as a prior consistent statement, see *Cuzzort v. State,* [supra], because no in-court testimony was ever elicited by the state with which the videotape could be consistent and the veracity of which could be attacked.

*Thornton* at 566.

Similarly, in this case, because Williams refused to answer any questions and thus gave no testimony in court with which the prior statement could be judged to be inconsistent, Williams's videotaped statement was inadmissible as a prior inconsistent statement under *Gibbons.*[3]

---

[3] Although the State does not now contend that the videotape was admissible under another exception to the hearsay rule, we can find no other exception under which it would have been admissible. It would not have been admissible under the necessity exception, as

This result is consistent with the federal rule regarding prior inconsistent statements. Federal Rule of Evidence 801 (d) (1) (A) provides, in relevant part, that a prior statement of a witness is admissible if the "declarant testifies at the trial" and the prior statement is "inconsistent with the declarant's testimony." See also McCormick on Evidence, Vol. 2, p. 121, § 251 (4th ed. 1992) (discussing under what circumstances, particularly an asserted loss of memory by the witness, there has been in-court testimony with which an out-of-court statement can be considered inconsistent); *United States v. Vargas*, 933 F2d 701, 705 (9th Cir. 1991) (under Rule 801 (d) (1), "the declarant must testify at trial").

(b) Although the lack of in-court testimony renders Williams's statement inadmissible regardless of whether Williams was subject to cross-examination, id. at 123 (if there is no in-court testimony with which the prior statement can be inconsistent, then the prior statement is inadmissible for that reason and "the question of cross-examination upon the statement is not reached"), we nevertheless agree with Barksdale's contention that Williams was not subject to cross-examination and that the admission of Williams's statement violated his right of confrontation.

With regard to this issue, the Supreme Court has held that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination," *United States v. Owens*, 484 U. S. 554, 560 (108 SC 838, 98 LE2d 951) (1988), the defendant's right of confrontation is satisfied. In *Owens*, an out-of-court statement of a witness identifying his attacker as the defendant was introduced into evidence under Federal Rule of Evidence 801 (d) (1) (C).[4] At trial, the witness asserted that he could not remember significant aspects of that previous statement. Owens contended that the witness's memory loss violated his right of confrontation. Noting that " '[t]he Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way,

that exception requires that the out-of-court declaration be given under circumstances indicating "particularized guarantees of trustworthiness," *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993), and as there is nothing in this record to overcome the inherent unreliability of an accomplice's testimony given while in police custody, see *Lee v. Illinois*, 476 U. S. 530, 543-548 (106 SC 2056, 90 LE2d 514) (1986). Neither would it have been admissible under the exception for co-conspirator's statements, as that exception is not available to statements given by one conspirator while in police custody that implicates another conspirator. See *Crowder v. State*, 237 Ga. 141, 150-154 (227 SE2d 230) (1976). Finally, Georgia does not recognize the exception for statements against penal interests. See OCGA § 24-3-8; *Green v. State*, 242 Ga. 261, 272 (249 SE2d 1) (1978).

[4] Under Federal Rule of Evidence 801 (d) (1) (C), an out-of-court statement regarding the "identification of a person made after perceiving the person" is admissible if "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement."

and to whatever extent, the defense might wish," ' " (emphasis in original) id. at 559, the Court held that a defendant's right of confrontation is satisfied if the defendant has the opportunity to cross-examine a forgetful witness about such matters as "his bias, his lack of care and attentiveness, . . . and even . . . the very fact that he has a bad memory," id. at 559.

The present case is distinguishable from *Owens*. Williams refused to testify in face of a trial court's order to do so or be held in contempt. Thus, unlike the witness in *Owens*, Williams was unavailable for any cross-examination. See generally McCormick at 132. The state's contention that Williams was available for cross-examination is disingenuous in light of its position at trial that Williams was "as unavailable as though he were dead."

Further, contrary to the state's assertion, we conclude that Barksdale did not waive his right to raise the issue of the denial of his right of confrontation by failing to ask Williams any substantive questions about the case. Barksdale's inquiry regarding whether Williams would answer any questions was reasonable in light of Williams's steadfast refusal to answer questions even under threat of contempt.

Although we have determined that Williams was not available for cross-examination, that conclusion alone does not mean that Barksdale's right of confrontation was violated. Even if a hearsay declarant is not subject to cross-examination at trial, the admission of the declarant's out-of-court statement does not violate the defendant's right of confrontation if the declarant's out-of-court statement meets the requirements of a firmly rooted exception to the hearsay rule or was made under circumstances demonstrating particular guarantees of trustworthiness. *Owens*, 484 U. S. at 560; *Idaho v. Wright*, 497 U. S. 805, 813-824 (110 SC 3139, 111 LE2d 638) (1990). Such is not the case here. As we have already held, the videotaped statement does not meet the requirements of any hearsay exception, see Division 2 (a) and n. 3, supra, and, as it was the statement of a co-defendant made while in custody, we cannot hold that it was made under circumstances showing particular guarantees of trustworthiness; see n. 3, supra; *Lee v. Illinois*, 476 U. S. 530, 543-545 (106 SC 2056, 90 LE2d 514) (1986).

(c) Finally, as Williams's videotaped testimony implicated, in detail, Barksdale as a chief actor in the slaying of the victim, we must conclude that its admission into evidence was harmful error. See *Crowder v. State*, 237 Ga. 141, 155 (227 SE2d 230) (1976); *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

3. We find no merit to Barksdale's contention that the statement made to Latasha Green by Rene Bundrage was inadmissible. Under the record before us in this appeal, the statement was admissible

under the co-conspirator exception to the hearsay rule. OCGA § 24-3-5. Because of our holding in Division 2 of this opinion, we find it unnecessary to address Barksdale's remaining enumerations of error in Case No. S94A1767, which concern whether the trial court properly admitted a tape recording of a conversation between Barksdale and Williams and whether the trial court properly admitted a videotaped statement of a witness as a prior inconsistent statement.

4. As for Case No. S94A1768, absent evidence that Barksdale was denied effective assistance of counsel as a result of inadequate compensation of counsel, counsel's argument that he was inadequately compensated for trying this case is not properly in issue on this appeal. See *Hightower v. State*, 259 Ga. 770, 772 (386 SE2d 509) (1989); *Jarrells v. State*, 258 Ga. 833, 837-838 (15) (375 SE2d 842) (1989); *Moon v. State*, 258 Ga. 748, 753 (6) (375 SE2d 442) (1988).

*Judgment affirmed in Case No. S94A1768 and reversed in Case No. S94A1767. All the Justices concur.*

DECIDED FEBRUARY 13, 1995.

*Martin L. Fierman*, for appellant.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General*, for appellee.