S09A0225. SOTO v. THE STATE.
(677 SE2d 95)

THOMPSON, Justice.
   Defendant Raymond Anthony Soto was convicted of malice
murder, and possession of a knife during the commission of a crime,
in connection with the slaying of Stephanie Nicole Burnett.[1] Soto

---

   [5] *Character*, 285 Ga. at 120 (quoting *Baugh v. State*, 276 Ga. 736, 739 (585 SE2d 616)
(2003)).

   [1] The crimes occurred on April 22, 2002. The grand jury indicted defendant and Matthew
John Wiedeman on May 7, 2002. Trial commenced on April 21, 2003, and the jury returned its
verdict on April 24, 2003. The trial court sentenced defendant on May 5, 2003, to life for malice
murder and five consecutive years for possession of a knife. Defendant's timely filed motion for
a new trial was denied on June 9, 2008. Defendant filed a notice of appeal on June 16, 2008.
The case was docketed in this Court on October 21, 2008, and submitted for decision on the

appeals, asserting the trial court erred in admitting the hearsay statements of his co-defendant, Matthew John Wiedeman, who entered a guilty plea prior to trial, and who gave testimony at trial which exonerated Soto, but who then refused to answer any further questions from either the prosecution or the defense.

1. Viewing the evidence in a light favorable to the verdict, as we are bound to do, we find the following: The victim, 16-year-old Stephanie Nicole Burnett, was romantically involved with Wiedeman. Wiedeman and Soto were friends. When the victim told Wiedeman that she was carrying his child, he decided to kill her by beating her with a barbell. He enlisted Soto in his plan. Wiedeman and Soto walked to the victim's house and lured her outside. Wiedeman hit the victim in the head with the barbell; Soto stabbed her with a knife. The victim's brother found her body the next morning. Crime scene investigators found a barbell, knife, two pairs of tennis shoes, two pairs of latex gloves and bloody clothing, at or near the scene of the murder. The evidence is sufficient to enable any rational trier of fact to find Soto guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. As noted above, Wiedeman entered a guilty plea and the State called him as a witness. He testified that Soto walked with him to the victim's neighborhood, but waited at a supermarket while he alone killed the victim by hitting her with a barbell and stabbing her with a knife. Suddenly, in the midst of further questioning by the State, Wiedeman announced that he would not answer any questions. He also refused to answer questions posed by the defense. He continued to refuse to answer questions even after the trial court ordered him to do so and threatened to hold him in contempt. Later, the State was allowed to impeach Wiedeman through the testimony of a police officer and a fellow prisoner by introducing hearsay statements Wiedeman gave to those individuals.[2] Soto asserts the trial court erred in admitting these hearsay statements, pointing out that he was unable to cross-examine Wiedeman as to whether, or why, he made them, and arguing that, therefore, his Sixth Amendment right of confrontation was violated.

Generally, when a witness refuses to continue to testify after having already done so, the proper remedy is to strike pertinent portions of the witness' testimony. As it is said: "[W]hen a witness declines to answer on cross examination certain pertinent questions relevant to a matter testified about by the witness on direct exami-

---

briefs on December 15, 2008.

[2] While in custody, Wiedeman told police that he killed the victim with Soto's help; he told the prisoner that Soto stabbed the victim.

nation, all of the witness' testimony on the *same subject matter* should be stricken." *Smith v. State*, 225 Ga. 328, 331 (168 SE2d 587) (1969). Thus, in this case, once Wiedeman refused to testify further about his and Soto's conduct on the night of the murder, the trial court would have been well advised to strike Wiedeman's testimony. However, neither party sought that remedy and the trial court was presented with only two alternatives: it could refuse to allow the State to impeach Wiedeman with his prior inconsistent statements or it could allow impeachment at the risk of impinging upon Soto's right of confrontation. Because it chose the latter course, we are faced with a difficult question: When, on direct examination, a witness gives testimony that exonerates a defendant, can the State introduce contradictory out-of-court statements to impeach him, when the statements inculpate the defendant and the witness refuses to answer further questions posed by either the State or the defendant?

(a) *Wiedeman's statement to police.*

> The confrontation clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U. S. 36, 40 (124 SC 1354, 158 LE2d 177) (2004).

*Gay v. State*, 279 Ga. 180, 181-182 (611 SE2d 31) (2005).

> Although the trial in this case took place prior to the date *Crawford* was decided, this Court has held that, to the extent that *Crawford* enunciated a new rule for the conduct of criminal prosecutions, it applies retroactively to all cases pending on direct review or not yet final. See *Bell v. State*, 278 Ga. 69 (597 SE2d 350) (2004).

*Gay v. State*, supra at 182, n. 2. See also *Richard v. State*, 281 Ga. 401 (1) (637 SE2d 406) (2006).

Wiedeman's in-custody statement to police was testimonial inasmuch as it was made during the course of an investigation, *Watson v. State*, 278 Ga. 763, 768 (2) (604 SE2d 804) (2004), and it is clear that Soto did not have an "opportunity to cross-examine [Wiedeman] because [Wiedeman] refused to testify. *Livingston v. State*, 268 Ga. 205, 206 (486 SE2d 845) (1997)." *Gay v. State*, supra. It follows that Wiedeman's statement to police was admitted erroneously "and that the trial judge should have excluded [it] without engaging in a hearsay or reliability analysis." Id.

(b) *Wiedeman's statement to the prisoner.* In *Barksdale v. State*, 265 Ga. 9 (453 SE2d 2) (1995), the prosecution called Barksdale's co-defendant as a witness, but he refused to testify. Nevertheless, the trial court allowed the prosecution to introduce a videotaped statement that the co-defendant gave to police, reasoning that the videotape was admissible as a prior inconsistent statement. On appeal, Barksdale argued that the introduction of the videotape violated his right of confrontation. This Court agreed, holding that the videotaped statement could not be deemed a prior inconsistent statement because the co-defendant gave no in-court testimony which was in conflict with it. Id. at 11. Going further, this Court also held that the videotaped statement was inadmissible because the witness refused to answer any questions in court and, therefore, the witness was not subject to cross-examination. In so holding, we observed that a prior inconsistent statement is admissible at trial and will not violate the right of confrontation as long as the " 'declarant is present at trial and subject to *unrestricted* cross-examination,' *United States v. Owens*, 484 U. S. 554, 560 (108 SC 838, 98 LE2d 951) (1988)." (Emphasis supplied.) Id. at 12.

The State argues that *Barksdale* is inapplicable because, unlike the declarant in that case, Wiedeman did testify and, therefore, his prior statements could be judged to be inconsistent with his trial testimony. We agree that *Barksdale* is not wholly on point because Wiedeman testified at trial. However, the mere fact that Wiedeman's trial testimony was inconsistent with his prior statements does not mean that his prior statements were admissible at trial. That is because prior inconsistent statements remain inadmissible in the absence of " 'an *opportunity* for effective cross-examination.' " Id. See also McCormick on Evidence, Vol. 2, § 251 (6th ed. 2006); *United States v. Torrez-Ortega*, 184 F3d 1128, 1132-1134 (10th Cir. 1999) (witness' invalid assertion of Fifth Amendment claim rendered him unavailable for cross-examination). Here, defendant was given no opportunity whatsoever to cross-examine Wiedeman because Wiedeman "shut down" in the midst of direct examination and refused to answer further questions posed by either the prosecution or the defense. We must conclude, therefore, that the admission of Wiedeman's prior statements violated defendant's right of confrontation.

The State asserts that the statement to the fellow prisoner was admissible under the necessity exception to the hearsay rule. This assertion must fail because that exception requires that the out-of-court declaration be given under circumstances indicating particularized guarantees of trustworthiness, and the out-of-court statements of an accomplice are inherently unreliable. See *Barksdale v. State*, supra at 12, n. 3. Likewise, the statement was inadmissible as the statement of a co-conspirator because, even if it can be said that

the conspiracy was ongoing when the statement was made, defendant did not have an opportunity to cross-examine the declarant. *Livingston v. State*, supra at 211. See also *Rachel v. State*, 247 Ga. 130, 135-136 (274 SE2d 475) (1981).

*Wilson v. State*, 277 Ga. 114 (587 SE2d 9) (2003), upon which the State relies, is not apposite. In that case, the witness denied making the prior inconsistent statement. In this case, to the contrary, Wiedeman was not asked, and he did not say, whether he made a prior statement to the prisoner.

(c) *Harmless error analysis.* The question remains as to whether the admission of Wiedeman's out-of-court statements in violation of Soto's constitutional right of confrontation was harmless beyond a reasonable doubt. *Gay v. State*, supra; *Yancey v. State*, 275 Ga. 550, 557-558 (570 SE2d 269) (2002). The record shows that a few weeks before the murder, Soto was heard saying that he would like to kill someone to see how it felt; that, on the night in question, an eyewitness saw two individuals hop a fence near the victim's residence; that he spoke to the individuals, one of whom he identified as Soto, and asked what they were doing; that Soto replied that they were trying to avoid the lights of a nearby convenience store; that two pairs of latex gloves and shoes, in addition to several t-shirts, a barbell and a knife were recovered at or near the crime scene, indicating that two individuals participated in the murder; and that one of those individuals was Wiedeman. The question that remains was whether Soto was Wiedeman's accomplice.

In a statement to police, Soto admitted that he was with Wiedeman on the night of the murder, adding that Wiedeman killed the victim while he waited across the street. More tellingly, Soto told a fellow prisoner that Wiedeman wanted to kill the victim because she was carrying his child; that he accompanied Wiedeman to the scene of the crime; that, as Wiedeman was struggling with the victim, he asked Soto to "do something"; and that, thereupon, Soto stabbed the victim in the chest with a knife. Soto added that he believed the victim was already dead when he stabbed her because "no blood scooted out." The additional statement to the prisoner comports with the autopsy results which revealed that, in addition to multiple injuries to the head and face, the victim suffered stab wounds to the left chest which pierced the lung and pulmonary artery and resulted in a significant amount of internal, but not external, bleeding.[3] In light of this overwhelming evidence, we find that any error in admitting Wiedeman's hearsay statements was

---

[3] The medical examiner opined that the amount of internal blood loss resulting from the knife wounds demonstrated that the victim was alive when she was stabbed.

harmless beyond a reasonable doubt. *Johnson v. State*, 238 Ga. 59, 60-61 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 4, 2009.

*Barbara B. Claridge*, for appellant.

*Rebecca A. Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

