S10A1841. WARD v. THE STATE.
S11A0033. KILGORE v. THE STATE.
(706 SE2d 430)

THOMPSON, Justice.

Appellants James Ward and Jonathan Kilgore were jointly charged and tried for the malice murder of John Reid and the aggravated assault of Jarvis Winder, as well as various related offenses. A jury found both appellants guilty as charged. They filed separate appeals which were consolidated by the Court.[1] Because the

---

[1] The crimes were committed on February 2, 2003. On March 23, 2004, a Fulton County grand jury returned a multi-count indictment charging Ward and Kilgore with malice murder, two counts of felony murder, burglary, two counts of aggravated assault, three counts of conspiracy to commit a crime, and four counts of possession of a firearm during the commission of a crime. Trial commenced on May 19, 2006, and concluded on May 23, 2006, with the jury's return of guilty verdicts on all counts. Both defendants were sentenced on May 23, 2006. Ward received life imprisonment for malice murder, twenty consecutive years

trial court excused a juror during ex parte proceedings in the absence of appellants and without appellants' knowledge or consent, we reverse and remand for a new trial.

Kilgore, Ward, and co-indictee Devoka Finch[2] plotted to rob Reid, a known drug dealer. Both Kilgore and Ward were armed with handguns, and the three drove to Reid's home ostensibly to purchase marijuana. Reid's friend, Winder, was also present at the house. Kilgore rang the back doorbell, and Reid let him in, while the two accomplices concealed themselves outside. Reid walked to a back bedroom and when he returned, gunfire erupted. Reid and Winder retreated to a back room where Reid collapsed and died of a gunshot wound to the back. Winder obtained a shotgun from the bedroom and returned to the front of the house where he and Kilgore exchanged gunfire. Winder escaped to a neighbor's house, and the police were called.

Ward and Kilgore fled by car. Finch remained in the area and was stopped and arrested near the crime scene by police officers who responded to the 911 call. Finch was wearing a bullet-proof vest and was carrying handcuffs. He was taken to the police station where he waived his *Miranda* rights and told the investigating officers that he, Ward, and Kilgore went to Reid's home for the purpose of committing an armed robbery; both Ward and Kilgore were armed with handguns; and Ward shot repeatedly at the victim.

Winder was also interviewed at the police station that evening. While there, he observed Finch and identified him as one of the perpetrators. Winder also identified Kilgore in a subsequent photographic lineup.

Kilgore returned home to his apartment after the shooting. He had Ward's blood on his clothing and was armed with a .22 caliber handgun. He showed the gun to a woman sharing his apartment and told her he had shot a man five times in the back, and that, in the

---

imprisonment for aggravated assault, five consecutive years for possession of a firearm in the commission of a burglary, and ten concurrent years for conspiracy to commit armed robbery. Kilgore was sentenced to life imprisonment for malice murder, twenty consecutive years for aggravated assault, ten consecutive years for conspiracy to commit armed robbery, ten additional concurrent years for conspiracy, and ten consecutive years for firearms possession. The remaining counts were either merged or vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Ward's motion for new trial was filed on May 26, 2006, amended on May 7, 2008, and denied on March 30, 2010. He filed a notice of appeal on April 20, 2010. The appeal was docketed during the September 2010 term of this Court. Kilgore's motion for new trial was filed on May 30, 2006, amended on September 5, 2008 and September 22, 2008, and denied on March 30, 2010. A notice of appeal was filed on April 12, 2010, and his appeal was docketed in the January 2011 term of this Court. Oral argument in both cases was heard on February 15, 2011.

[2] Finch entered a guilty plea to voluntary manslaughter and testified at trial against Ward and Kilgore.

melee, Ward had been shot.

Later that evening, using a fictitious name, Ward received treatment at Grady Hospital for multiple shotgun wounds.

1. Appellants contend that their convictions cannot stand because they are based on the uncorroborated testimony of Finch, their accomplice.

> The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that [he] is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt. . . . Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. [Cit.] See also OCGA § 24-4-8. The sufficiency of the corroborating evidence is for the trier of fact to decide. [Cit.]

*Baines v. State*, 276 Ga. 117, 119 (1) (575 SE2d 495) (2003).

The independent corroborating evidence in this case was substantial. Finch's testimony implicating Ward and Kilgore was corroborated by the aggravated assault victim who positively identified Kilgore, Kilgore's own admission to the woman in his apartment, evidence that Ward had sustained shotgun wounds on the evening of the crimes, ballistics evidence tying Ward to the crime scene, and the presence of Ward's blood on Kilgore's clothing and in the getaway vehicle. Accordingly, the evidence was sufficient to authorize a rational trier of fact to find Ward and Kilgore guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Kilgore asserts that the trial court erred in denying his motion to quash the indictment alleging that the grand jury heard testimony only from an investigator in the district attorney's office who did not have first hand knowledge of the case. Although we are unable to verify Kilgore's assertions, as secrecy is maintained with regard to grand jury proceedings, see *In re Gwinnett County Grand Jury*, 284 Ga. 510 (668 SE2d 682) (2008); OCGA §§ 15-12-83 (b), 15-12-67 (b), we find no error.

> [W]here . . . it appears that a competent witness or witnesses were sworn and examined before the grand jury by whom the indictment was preferred, a plea in abatement on the ground that it was found on insufficient evidence, or

illegal evidence, or no evidence, will not be sustained, because it comes under the rule that no inquiry into the sufficiency or legality of the evidence is indulged.

(Emphasis omitted.) *Felker v. State*, 252 Ga. 351, 366 (2) (a) (314 SE2d 621) (1984), reiterating the rule in *Summers v. State*, 63 Ga. App. 445, 449 (11 SE2d 409) (1940). See also *Smith v. State*, 279 Ga. 48, 50 (4) (610 SE2d 26) (2005) (where a competent witness is sworn and testifies before the grand jury, and the defendant is thereafter found guilty beyond a reasonable doubt, the sufficiency of the evidence to support the indictment is not open to question). It follows that this enumeration of error presents nothing for review.

3. Kilgore also asserts that the trial court erred in denying his motion for severance of defendants alleging that their defenses were antagonistic and the law as to each defendant was confusing to the jury. The burden is on the moving party to make a clear showing of prejudice and a denial of due process in the absence of severance. *Moss v. State*, 275 Ga. 96, 97 (2) (561 SE2d 382) (2002).

The following factors must be considered by a trial court when exercising its discretion in regard to a motion to sever in a case in which the death penalty is not sought. "(1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights?" [Cit.]

*Howard v. State*, 279 Ga. 166, 171 (4) (611 SE2d 3) (2005). Here, there was no danger of confusion because only two defendants were on trial and the same evidence was applicable to each. Even assuming arguendo that they proffered antagonistic defenses, that factor alone is insufficient to require the grant of a separate trial absent a showing of harm. Id. Kilgore has not carried that burden.

4. Both appellants assert that their constitutional rights under the Georgia Constitution to be present at all critical stages of the proceedings were violated when the trial court dismissed a juror ex parte and in the absence of a waiver from either appellant.

After a lunch recess, which took place at the conclusion of closing arguments for the defense, the court and counsel returned to the courtroom. Neither appellant was present when the court placed the following on the record:

The Court: All right, I need to go on the record. . . . I think we can do this because it's me without the defendants here.

Kilgore's Counsel: Okay.

The Court: I excused a juror at lunch. . . . The reason I did was, she's really upset. She is the one that in voir dire approached the bench and talked about having anxiety attacks.

. . .

Ward's Counsel: Oh, right. I remember.

Kilgore's Counsel: And she's gone?

The Court: And I let her go. You all weren't here. If you had seen her, you would have agreed. She was upset before, but she said she couldn't — she couldn't even listen to what you said and she couldn't focus.

Thus, counsel were informed about the discharge of the juror after the fact and outside the presence of appellants. No objection was lodged by either defense attorney, and the trial resumed with colloquy between counsel and the court concerning limitations on the scope of the State's closing argument and sentencing issues. At the conclusion of that discussion, appellants and the jurors were brought to the courtroom, and the trial resumed with closing argument by the State. Nothing further pertaining to the discharge of the juror was placed on the record.

Kilgore's trial counsel testified at the hearing on the motion for new trial that he had no discussion with his client during the pendency of the trial concerning the discharge of the juror. When asked why he did not object to the court's actions, counsel testified that while he would have preferred to voir dire the juror, it was his understanding that she had already left the courthouse and was no longer available. Ward's trial counsel similarly testified that he had no recollection of having discussed the dismissal of the juror with his client during trial.

Embodied within the constitutional right to the courts, see Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983, is a criminal defendant's " 'right to be present and see and hear, all the proceedings which are had against him on the trial before the Court.' " (Emphasis omitted.) *Pennie v. State*, 271 Ga. 419, 421 (1) (520 SE2d 448) (1999). See also *Holsey v. State*, 271 Ga. 856, 860 (5) (524 SE2d 473) (1999). This "is a fundamental right and a foundational aspect of due process of law." *Hampton v. State*, 282 Ga. 490, 491 (2) (a) (651 SE2d 698) (2007). See also *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557) (1955). We have acknowledged that "[p]roceedings at which the jury composition is selected or changed are . . . critical stage[s] at which the defendant is entitled to be present." *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005). "Thus, where the accused is involuntarily absent from the proceedings, the trial judge

should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury." *Pennie*, supra at 421 (1), citing *Hanifa v. State*, 269 Ga. 797 (6) (505 SE2d 731) (1998).

Notwithstanding, the right to be present belongs to the defendant and the defendant is free to relinquish that right if he or she so chooses. "The right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver." *Hampton*, supra at 492.

The record in the present case shows no waiver by either appellant nor an express authorization for counsel to waive the right on their behalf. Although neither counsel objected to the court's action, such inaction on the part of counsel does not constitute a waiver for their clients. See *Russell v. State*, 230 Ga. App. 546, 547 (1) (497 SE2d 36) (1998) (" '[e]ven though defense counsel was present in (appellant's) absence and made no objection, this does not waive the right or prevent error from being asserted on appeal' "), citing *Wilson*, supra.

As appellants' rights to be present were violated and their absence was neither consented to nor waived, error would occur unless appellants knowingly acquiesced in a waiver on the part of their attorneys.

> Acquiescence "means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in. [Cits.] One can not acquiesce in a wrong while ignorant that it has been committed, and the knowledge must be of facts." [Cit.] Acquiescence may arise "where a person who knows that he is entitled to . . . enforce a right neglects to do so for such a length of time that, under the circumstances of the case, the other party may fairly infer that he has waived or abandoned his right." Black's Law Dictionary (5th ed.)

*Russell*, supra at 547. Since appellants were not informed of the ex parte excusal of the juror, they could not knowingly acquiesce to the waiver on the part of their attorneys.

This Court has consistently ruled that the

> denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal. Instead, a violation is presumed to be prejudicial. Thus, absent a valid waiver, violation of the right to

be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal.

*Smith v. State*, 284 Ga. 599, 609 (4) (669 SE2d 98) (2008). See also *Peterson v. State*, 284 Ga. 275, 279, fn. 11 (663 SE2d 164) (2008); *King v. State*, 273 Ga. 258 (15) (539 SE2d 783) (2000); *Holsey v. State*, 271 Ga. supra at 861 (5), fn. 11. It follows that the judgments of conviction in this case must be reversed and that appellants are entitled to a new trial.[3] To the extent that *Kirkland v. State*, 247 Ga. App. 526 (3) (a) (543 SE2d 791) (2001), overruled on other grounds in *Kirkland v. State*, 274 Ga. 778 (560 SE2d 6) (2002), is inconsistent with our holding, it is hereby overruled.

5. We do not address the remaining enumerations of error since they are not likely to recur on retrial.

*Judgments reversed. All the Justices concur.*

DECIDED FEBRUARY 28, 2011.

*Bruce S. Harvey, K. Julie Hojnacki, Jennifer S. Hanson,* for appellant (case no. S10A1841).

*Good & Lee, Darice M. Good,* for appellant (case no. S11A0033).

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Paige R. Whitaker, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General,* for appellee.

---

[3] Appellants also enumerate as error other instances at trial where the court met with and communicated with the jurors ex parte. Although the record supports these contentions, we do not reach the merits of those claims since reversal is demanded due to the ex parte discharge of the juror, and the additional claims are not likely to recur on retrial.

We also note that the trial court sentenced Kilgore on Count 7 of the indictment to a ten-year sentence to run concurrent with the life sentence imposed for malice murder. Count 7 charged co-indictee Finch with conspiracy to commit armed robbery. Kilgore was not charged in Count 7 and because Finch entered a guilty plea prior to trial, that Count was not included on the verdict form and was not even considered by the jury. Thus, the sentence on Count 7 is void. But because the judgments of conviction are reversed, the sentences are also vacated; therefore, we need not specifically address that unlawful sentence.