**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 2, 2012**

# In the Court of Appeals of Georgia

A12A0458. ADAMS v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Ronald Adams on one count each of burglary, theft by taking, possession of cocaine with intent to distribute, and possession of cocaine. Adams appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in admitting a witness's out-of-court statements into evidence and in dismissing a juror *ex parte* just prior to the beginning of deliberations. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence demonstrates that on the night of July 17, 2007, a local scrap metal company was

---

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

burglarized with the thieves stealing scrap metal worth several thousand dollars. Surveillance footage recorded that night by the scrap metal company's video-surveillance cameras showed a person climbing over a fence into the back of the company's property, throwing a significant amount of copper wiring and other metals belonging to the company over the fence, climbing back over the fence, and then escaping in an SUV driven by a second person. And although a local police detective reviewed the surveillance footage the next day, he was unable to identify the thieves.

Nearly two weeks later, just after midnight on July 30, 2007, the scrap metal company was once again burglarized. This time the thieves, who apparently used a bolt cutter to cut the lock on the fence in the back of the company's property, stole more scrap metal, a metal cutting torch, and several propane tanks that powered the torch. However, after the first burglary, the scrap metal company installed additional surveillance cameras, which provided a better view of the second burglary. And indeed, upon reviewing the surveillance footage of the thieves involved in the second burglary later that morning after it occurred, the same investigating detective who had reviewed the first surveillance footage now recognized one of the perpetrators as Adams, whom he had known for several years. Additionally, the detective recognized the SUV shown in the surveillance footage as belonging to Adams.

2

Later that same day, the detective obtained a warrant to search Adams's residence and SUV. When the detective arrived at Adams's residence, he saw Adams leaving in his SUV. Consequently, the detective initiated a traffic stop by activating his vehicle's blue lights and pulling in front of Adams's SUV. Adams stopped, and as he exited his vehicle, the detective saw him throw a small white container toward some nearby bushes. The detective retrieved the container and found several pieces of crack cocaine inside it. In addition, the detective found a recent Walmart receipt for bolt cutters in Adams's pocket, bolt-cutters inside Adams's house, and several pieces of scrap metal in the back of Adams's SUV.

Thereafter, Adams was indicted on two counts of burglary[2] (Count 1 relating to the July 17 break-in and Count 2 relating to the July 30 break-in), two counts of theft by taking[3] (Count 3 relating to the July 17 break-in and Count 4 relating to the July 30 break-in), one count of possession of cocaine with intent to distribute,[4] and one count of possession of cocaine.[5] During Adams's trial, the State played the

---

[2] *See* OCGA § 16-7-1 (a).

[3] *See* OCGA § 16-8-2.

[4] *See* OCGA § 16-13-30 (b).

[5] *See* OCGA § 16-13-30 (a).

surveillance recordings of both the July 17 and the July 30 break-ins, and the investigating detective testified regarding his recognition of Adams upon reviewing the July 30 recording as well as his subsequent arrest of Adams. In addition, the president of the scrap metal company and one of his employees testified regarding the break-ins and the value of the items stolen.

At the trial's conclusion, the jury found Adams not guilty on the counts pertaining to the July 17 burglary but guilty on all remaining counts. Adams subsequently filed a motion for new trial, which the trial court denied after a hearing. This appeal follows.

1. Adams contends that the trial court erred by admitting the out-of-court statements of David Williams, Adams's alleged accomplice to the burglary, arguing that the statements constituted hearsay and violated his Confrontation Clause rights.[6] We disagree.

At the outset, we note that "[a]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will

---

[6] *See* U.S. CONST. amend. VI.

not disturb the exercise of that discretion absent evidence of its abuse."[7] During the trial of this matter, the State called David Williams, who had been charged as being Adams's accomplice to the burglary and theft. However, immediately after being sworn in, Williams exclaimed that he had "no intention whatsoever to testify for the State."[8] After sending the jury out of the courtroom, the trial court had the State's prosecutor continue to question Williams about whether he would testify, but Williams maintained that he would not.

At that point, the State's prosecutor asked the trial court for permission to call the prosecutor's investigator to testify about a statement the investigator obtained from Williams a few days earlier. Over Adams's objection, the trial court declared that Williams's refusal to testify rendered him unavailable, and thus, the court granted the prosecutor's request to call her investigator as a witness. Thereafter, the investigator testified that he interviewed Williams a few days earlier at the sheriff's

---

[7] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (punctuation omitted).

[8] Although not entirely clear from the record, prior to Adams's trial, Williams apparently pleaded guilty to charges arising from the burglaries. However, when called as a witness by the State, Williams claimed that he was withdrawing his plea based on ineffective assistance of counsel.

office and that Williams admitted that he and Adams broke into the scrap metal company's property and stole scrap metal.

When the trial recommenced the next day after an overnight recess, the trial court informed the State's prosecutor and Adams that it now believed it had erred by allowing the investigator to testify about Williams's out-of-court statements. The court then suggested that it would cure the error by allowing Adams to cross-examine Williams before the jury. Williams was then recalled as a witness, and under cross-examination, he denied providing any information whatsoever about the burglary to the prosecutor's investigator.

Despite being given the opportunity to cross-examine Williams, Adams now argues on appeal that the introduction of Williams's out-of-court statements constituted hearsay and violated his Confrontation Clause rights under the Sixth Amendment. We agree that the trial court erred by initially admitting Williams's out-of-court statements. It is well established that "[t]he confrontation clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-

6

examine the declarant."[9] And here, Williams's in-custody statement to the prosecutor's investigator was testimonial inasmuch as it was obtained to further the State's investigation of the case.[10] And at the time that Williams's statements were introduced into evidence, via the investigator's testimony, Adams had not yet been given an opportunity to cross-examine Williams because of Williams's refusal to testify.[11] It therefore follows that Williams's statements to the prosecutor's investigator were initially admitted erroneously.[12]

Nevertheless, we conclude that the trial court cured its error by permitting Adams to recall Williams as a witness and allowing Adams to cross-examine him. Indeed, when the declarant appears for cross-examination at trial, "the Confrontation Clause places no constraints at all on the use of [his] prior testimonial statements."[13]

---

[9] *Soto v. State*, 285 Ga. 367, 369 (2) (a) (677 SE2d 95) (2009) (punctuation omitted).

[10] *See id.* (holding that witness's in-custody statement made during the course of police investigation was testimonial).

[11] *See id.*

[12] *See id.*

[13] *Lott v. State*, 281 Ga. App. 373, 374 (2) (636 SE2d 102) (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 59 (IV) (124 SCt 1354, 158 LE2d 177) (2004)).

7

And given that Adams was afforded the opportunity to confront and cross-examine Williams, and in doing so obtained testimony that contradicted the investigator's testimony, the trial court's error in initially admitting Williams's out-of-court statement was cured and, therefore, is not grounds for reversal.[14]

Moreover, even if we were to assume for the sake of argument that making Williams available for cross-examination did not cure the trial court's initial error, the admission of Williams's out-of-court statements was harmless in light of the overwhelming evidence against Adams. As previously noted, the July 30 burglary was recorded by the scrap metal company's surveillance cameras, and the investigating detective, who knew Adams from previous encounters, positively identified Adams as being one of the burglars shown in the surveillance footage as did the jury as evidenced by the verdict. Furthermore, a receipt for bolt cutters, which employees of the scrap metal company surmised were used to cut the lock on the facility's back gate, was found on Adams, actual bolt cutters were found at his residence, and pieces of scrap metal were found inside his SUV. Under these

---

[14] *See Lott*, 281 Ga. App. at 374-75 (2) (holding that admission of witness's statement to police was not reversible error because State located witness the day after her statement was read into evidence, and she was made available for cross-examination by defendant).

8

circumstances, it is highly probable that Williams's out-of-court statements did not contribute to the jury's guilty verdict.[15]

2. Adams also contends that the trial court erred in dismissing a juror *ex parte* just prior to the beginning of the jury's deliberations, thereby violating his right to be present at all critical stages of his trial. We disagree.

Embodied within the right to the courts under the Georgia Constitution,[16] is a criminal defendant's right "to be present and see and hear, all the proceedings which are had against him on the trial before the Court."[17] Indeed, the right to be present "is a fundamental right and a foundational aspect of due process of law."[18] And our Supreme Court has "acknowledged that proceedings at which the jury composition

---

[15] *See Soto*, 285 Ga. at 371-72 (2) (c) (holding that witness's out-of-court statement admitted in violation of the Confrontation Clause was harmless in light of overwhelming evidence of defendant's guilt); *Massey v. State*, 306 Ga. App. 180, 183 (2) (b) (702 SE2d 34) (2010) (holding that improper admission of evidence was harmless error in light of victim's positive identification of defendant as perpetrator); *Lawrence v. State*, 305 Ga. App. 199, 202-03 (3) (699 SE2d 406) (2010) (same).

[16] *See* Ga. Const. (1983) Art. I, Sec. I, Par. XII.

[17] *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011) (punctuation omitted).

[18] *Hampton v. State*, 282 Ga. 490, 491-92 (2) (a) (651 SE2d 698) (2007); *see also Tennessee v. Lane*, 541 U.S. 509, 523 (IV) (124 SCt 1978, 158 LE2d 820) (2004).

9

is selected or changed are critical stages at which the defendant is entitled to be present."[19] Accordingly, where the accused is involuntarily absent from the proceedings, "the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury."[20]

In the case *sub judice*, after charging the jury, the trial court recessed for lunch and instructed the jurors to refrain from beginning their deliberations until they returned. But upon the jury returning from lunch and beginning their deliberations, the trial court informed the State's prosecutor and Adams's counsel on the record that during the lunch recess, one of the jurors learned that a storm had just knocked down a large tree onto the juror's house. The court further explained that because the juror was extremely upset, the court excused her and sent the alternate juror in to deliberate. Neither the State's prosecutor nor Adams's counsel objected, but based on our review of the record, it does not appear that Adams was present in the courtroom at the time.

But a short time later, while the jury continued to deliberate, Adams's counsel informed the trial court that Adams had inquired about the excused juror. Addressing

---

[19] *Ward*, 288 Ga. at 645 (4) (punctuation omitted).

[20] *Id.* at 645-46 (4) (punctuation omitted).

10

Adams directly, the trial court responded as follows: "Mr. Adams, shortly before lunch because of our extreme weather, [the excused juror] had a tree fall on her house, collapse her roof. And she was very distraught. She was upset and that is why we have extra jurors, so I was able to excuse her and the alternate was allowed to deliberate. It was a pretty bad situation." Following the court's remarks, neither of the parties lodged an objection, and Adams's counsel responded to the court's remarks by simply stating, "Thank you, Judge."

Nevertheless, Adams now argues that the trial court's decision to excuse the juror *ex parte* violated his right to be present at all critical stages of his trial. However, although a defendant's right to be present is fundamental, "the defendant is free to relinquish that right if he or she so chooses."[21] In fact, the right is waived "if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver."[22] And here, the record shows that shortly after excusing the juror, the trial court

---

[21] *Id.* at 646 (4).

[22] *Id.* (punctuation omitted); *see Hampton*, 282 Ga. at 492 (2) (a); *Harmon v. State*, 224 Ga. App. 890, 891 (1) (482 SE2d 730) (1997).

explained its *ex parte* decision to both Adams and his counsel, and neither objected. Thus, at the very least, Adams acquiesced in his counsel's waiver of his right to be present at all critical proceedings.[23] Accordingly, the trial court's *ex parte* dismissal of the juror does not warrant reversal of Adams's convictions.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[23] *See Hampton*, 282 Ga. at 492 (2) (holding that trial court's interviews of two jurors without defendant present did not violate defendant's right to be present at all critical proceedings because, in part, defendant acquiesced in his counsel's waiver of the right); *Harmon*, 224 Ga. App. at 891-92 (2) (holding that defendant waived his right to be present at critical proceedings when trial court informed defendant that it had excused two potential jurors ex parte and defendant made no objection until the jury was selected and sworn). *Compare Ward*, 288 Ga. at 646 (4) (holding that defendant's right to be present was violated and reversal was required when trial court discharged juror ex parte and informed counsel, but no evidence indicated that defendant was even informed of discharge, much less acquiesced to it, until post-conviction).