**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 5, 2020**

# In the Court of Appeals of Georgia

A20A0950. THE STATE v. HINES et al.

McFadden, Chief Judge.

Mikaila Lynne Hines and Samantha Kendrial Watkins, the defendants in this case, have been charged with committing the offense of exploitation of an elder person by deceiving Myra Ford to believe that they were her granddaughters and consequently obtaining checks drawn on her account. Before trial, the trial court issued an order deeming inadmissible an audio recording of a law enforcement interview of Ford, who is now deceased. The state now appeals this order pursuant to OCGA § 5-7-1 (a) (5). Because the defendants did not have an adequate opportunity to cross-examine Ford about the interview during her deposition, the trial court did not abuse her discretion, so we affirm.

1. *Facts and procedural background.*

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review. However, we accept a trial court's factual findings unless they are clearly erroneous." *McCoy v. State*, 332 Ga. App. 626, 628 (774 SE2d 179) (2015) (punctuation omitted).

(a) *Ford's law enforcement interview, deposition, and death.*

It appears that in January 2016, Bibb County law enforcement officers who were investigating the case conducted a recorded interview of Ford, in which she stated that she did not authorize the checks at issue. After formal charges were brought against the defendants, the state filed an emergency motion to preserve Ford's testimony by deposition, under OCGA § 24-13-130, which is set out in the margin,[1] stating that a deposition was necessary because Ford was approximately 85 years old and in poor health. The trial court granted the motion, scheduled the state's direct examination of Ford for July 28, 2017, and ruled that the defendants' attorneys

---

[1] OCGA § 24-13-130 (a) (1) provides: "At any time after an accused has been charged with an offense against the laws of this state . . . , upon motion of the state or the accused, the court having jurisdiction to try the offense charged may, after notice to the parties, order that the testimony of a prospective material witness of a party be taken by deposition and that any designated evidence not privileged be produced at the same time and place." Under OCGA § 24-13-130 (b) (6), a deposition may be scheduled for a material witness who is at least 72 years old.

2

had the option to cross-examine Ford either immediately after the state's direct examination or within two weeks thereafter.

Ford's videotaped deposition shows that she was severely infirm and struggled to understand and answer questions. Indeed, Ford rarely even acknowledged the questioner, with whom it appears that she never made eye contact; her demeanor for nearly the entire deposition suggests that she was unaware that questions were being asked of her; and nearly all of the very few responses she was able to give were difficult or impossible to hear.

When the state first asked Ford whether she remembered previously speaking with law enforcement officers about this case, she appeared to say "yes." However, when the state asked Ford whether she was shown any checks during this law enforcement interview, and when the state showed her documents to try to refresh her memory of the interview, she was nonresponsive. The defendants' attorneys objected to further questioning on the basis that Ford was not competent to testify, but the state continued with its direct examination.

The state again asked Ford whether she remembered speaking with law enforcement officers, but she still was nonresponsive and mumbled something unintelligible. The state played a brief portion of Ford's recorded law enforcement

3

interview and asked her whether she could remember the interview or identify herself on the recording, but she remained largely nonresponsive and at one point said that she could not remember the interview. The state stopped playing the recording after only a few minutes, admitting that it was not helping Ford. After the state indicated that it was concluding its direct examination, the defendants' attorneys declined to cross-examine Ford on the basis that she was not competent to testify. It appears that Ford died three or four weeks after her deposition.

(b) *The trial court's ruling excluding Ford's law enforcement interview.*

The state sought a pre-trial ruling on the admissibility of the audio recording of Ford's law enforcement interview, arguing that admission of the recording would not violate the Confrontation Clause because, although the defendants' attorneys were not, of course, present at the investigative interview, they were given an opportunity to cross-examine Ford at her deposition, but did not do so. The state asserted that because Ford was able to acknowledge the interview at her deposition, it did not matter that she could not remember the details of the interview. The defendants responded that the Confrontation Clause barred admission of the interview because their attorneys did not have an opportunity to cross-examine Ford about the interview

4

at the deposition, where she was virtually nonresponsive and not competent to acknowledge anything that was shown to her.

The trial court issued an order excluding the audio recording, stating:

Upon reviewing the video deposition, the [c]ourt finds that [Ford] did not even acknowledge the audio recording. Beyond that, it was evident that [Ford] was infirm and below any competency level required of a deponent in a deposition, and this is before we even get to the question of medical competency. The [d]efendants have thus not had the opportunity to cross-examine [Ford] regarding her statements in the audio recording, and the audio recording is therefore excluded.

The state filed a timely notice of appeal from the trial court's order. The court subsequently issued another order further explaining her reasoning, but we may not consider that order because "the filing of the notice of appeal operates as a supersedeas and deprives the trial court of the power to affect the judgment appealed, so that subsequent proceedings purporting to supplement, amend, alter or modify the judgment, whether pursuant to statutory or inherent power, are without effect." *Upton v. Jones*, 280 Ga. 895, 896 (1) (635 SE2d 112) (2006) (after notice of appeal was filed, habeas court lost jurisdiction to enter order clarifying ruling).

2. *Opportunity to cross-examine.*

5

The state argues that the defendants were given the opportunity to cross-examine Ford during her deposition, so her inability to recall the details of the interview does not render it inadmissible. But as detailed below, the trial court did not abuse her discretion in ruling that the interview was inadmissible because the defendants did not have an adequate opportunity to cross-examine Ford about it.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The right to confront one's accusers is "a bedrock procedural guarantee that applies to both federal and state prosecutions, and is a concept that dates back to Roman times." *Freeman v. State*, 329 Ga. App. 429, 433 (2) (765 SE2d 631) (2014) (citation and punctuation omitted).

It is well-settled that the Confrontation Clause bars the admission of out-of-court statements of an unavailable witness when (1) the statements are testimonial in nature, and (2) the defendant does not have a prior opportunity to cross-examine the witness about the statements. See, e.g., *Crawford v. Washington*, 541 U. S. 36, 68 (124 SCt 1354, 158 LE2d 177) (2004); *Soto v. State*, 285 Ga. 367, 369 (2) (a) (677 SE2d 95) (2009); *Brawner v. State*, 278 Ga. 316, 318 (2) (602 SE2d 612) (2004); *Moody v. State*, 277 Ga. 676, 679-680 (4) (594 SE2d 350) (2004). Here, Ford will be

unavailable to testify at trial, and there is no dispute that her statements in her law enforcement interview are testimonial. See generally *Hatley v. State*, 290 Ga. 480, 484-485 (II) (722 SE2d 67) (2012) (statements to law enforcement officers are testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution[,]" not to meet an ongoing emergency) (citation omitted). So the admissibility of her interview statements depends on whether the defendants had a prior opportunity to cross-examine her about the statements.

The trial court was authorized to find that the defendants did not have an adequate opportunity to effectively cross-examine Ford about her interview statements. Ford was nonresponsive throughout her deposition and was essentially unable to acknowledge or respond to questions regarding whether she remembered the interview or any other matters in the case. Due to Ford's inability to acknowledge or respond to such questions, the defendants had no opportunity whatsoever for effective cross-examination about her interview. See *Crawford*, 541 U. S. at 57 (IV) ("[P]rior trial or preliminary hearing testimony is admissible only if the defendant had an *adequate opportunity* to cross-examine.") (emphasis supplied); cf. *Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999) (while the Confrontation Clause

7

does not guarantee a cross-examination that produces results "in whatever way and to whatever extent, the defense might wish," it nevertheless guarantees "an *opportunity* for *effective* cross-examination") (emphasis supplied); see also *Legree v. State*, 344 Ga. App. 793, 797 (1) (812 SE2d 68) (2018) ("[T]he admission at trial of the victim's and the minor child's statements to the police officer infringed upon [the defendant's] constitutional right to confront the witnesses against him, since he had not had a prior opportunity to cross-examine the declarants about the contents of the hearsay statements.").

The state relies on cases holding that the admission of the prior statement of a witness, who is present at trial but does not recall the statement or the reasons for giving it, does not violate a defendant's right to confront the witness. See *United States v. Owens*, 484 U. S. 554, 559-560 (II) (108 SCt 838, 98 LE2d 951) (1988); *LeBlanc v. State*, 283 Ga. App. 434, 436-437 (3) (641 SE2d 646) (2007). The state's reliance on these cases is misplaced. There, the witness appeared at trial and was able to state whether or not he or she remembered the prior statement or the circumstances surrounding it, and therefore the defendant could cross-examine the witness about any memory problems regarding the statement. See *Brown v. State*, 266 Ga. 723, 725 (2) (470 SE2d 652) (1996) ("The sixth amendment . . . is satisfied if a defendant is given

8

the opportunity to cross-examine a forgetful witness about his bias, his lack of care and attentiveness, and even the very fact that he has a bad memory.") (punctuation omitted).

Here, by contrast, Ford could not meaningfully respond to questions, much less state one way or another whether she remembered giving the interview statements. Therefore, the defendants did not have an adequate opportunity to cross-examine her about the interview — including her memory of it — and this case is more analogous to cases holding that the Confrontation Clause bars the admission of a prior statement of a witness who completely refuses to testify when called at trial. See, e.g., *Douglas v. Alabama*, 380 U. S. 415, 419-420 (I) (85 SCt 1074, 13 LE2d 934) (1965); *Soto*, 285 Ga. at 370-371 (2) (b); *Horne v. State*, 281 Ga. 799, 808 (5) (642 SE2d 659) (2007); *Gay v. State*, 279 Ga. 180, 182 (2) (611 SE2d 31) (2005); *Barksdale v. State*, 265 Ga. 9, 12-13 (2) (b) (453 SE2d 2) (1995). Like a witness who refuses to testify at trial, Ford was "unavailable for any cross-examination" at her deposition in light of her inability to acknowledge or respond to questions. See *Barksdale*, 265 Ga. at 13 (2) (b); see also *Soto*, 285 Ga. at 370 (2) (b) ("[D]efendant was given no opportunity whatsoever to cross-examine [the witness] because [he] shut down in the midst of

direct examination and refused to answer further questions posed by either the prosecution or the defense.").

Because the trial court was authorized to find that the defendants did not have an adequate opportunity to cross-examine Ford about her testimonial statements in the interview, the trial court did not err in ruling that the interview was inadmissible.

(3) *Other challenges to the trial court's ruling.*

Given the above conclusion, we need not address the state's other argument, that the trial court erred in finding that Ford was incompetent at her deposition and did not acknowledge the interview.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur.*