S13A0901. JOHNSON v. THE STATE.
(748 SE2d 434)

MELTON, Justice.

Following a jury trial, Randy Johnson, Jr., appeals his convictions for malice murder, felony murder, aggravated assault, and armed robbery, contending that the evidence was insufficient to support the verdict and that his due process rights were violated.[1] For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on the morning of July 7, 2006, Ronald Cooper cashed a check for nine thousand dollars and received cash, including a large number of one hundred dollar bills. Later that day, Cooper called Larry Gaddis and told him, among other things, that he was about to take a shower at Roland Rogers's home while he waited on Johnson and Keith Hill. The call log from Cooper's cell phone indicated that Cooper missed a call from "Randy" at 12:46 p.m. Rogers, a friend of

---

[1] On May 29, 2008, Johnson and a co-defendant were indicted for the malice murder, felony murder, and aggravated assault of Ronald Cooper and Vickie Wolford (one count of each crime for each victim), as well as armed robbery. Following a joint jury trial, Johnson was found guilty on all counts, and he was sentenced to two concurrent life sentences for the malice murder counts and twenty consecutive years for armed robbery. The convictions for felony murder were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and all remaining counts were merged for purposes of sentencing. On January 12, 2010, Johnson filed a motion for new trial, which he amended on January 29, 2010 and October 19, 2011. The motion was denied on September 28, 2012, and Johnson filed a timely notice of appeal. Thereafter, this matter was docketed to the April 2013 term of this Court and submitted for decision on the briefs.

Cooper, had previously consented to the use of his home, where Cooper and his girlfriend, Vickie Wolford, went that afternoon. When Rogers returned home from work, he found Cooper's vehicle in the driveway. Inside, Rogers discovered the bodies of Cooper and Wolford, who had been beaten and shot to death.[2] Rogers called 911 from a neighbor's home. Police arrived thereafter and secured the scene.

On the afternoon of the murder, an African-American male was seen driving a vehicle that was found abandoned and burning a short time later in a field less than three miles away from the crime scene. Police recovered the metal plate with the vehicle's VIN, and records showed that the car was registered to Johnson's mother. Projectiles found at the scene and taken from Cooper's body indicated that they were all fired from the same .38 caliber handgun. Demetrius Appling testified that Johnson carried a .38 caliber handgun. On the evening of the murders, Appling saw Johnson with rolls of one hundred dollar bills. After the murders, Johnson told Evan Hood, "yeah, we killed them crackers." In a statement to his acquaintance, Keith Hill, Johnson admitted taking the money and shooting Wolford while his co-defendant shot Cooper. He also admitted to burning his mother's vehicle to destroy some clothing.

This evidence was sufficient to enable the jury to find Johnson guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Johnson contends that his due process rights were violated when the prosecutor improperly testified during his examination of Hill. The record shows that, when the State called Hill to the stand to testify about prior statements he made to police, Hill immediately recanted, testifying that all of his prior statements were lies. After Hill was declared a hostile witness, the prosecutor began asking him about his former statements. Hill admitted that he previously told the GBI that (1) Johnson's co-defendant asked him to assist him in obtaining a gun, (2) Johnson told him that he shot Wolford and his co-defendant shot Cooper, and (3) Johnson told him that he burned his mother's car to destroy clothes he had been wearing. On the stand, however, Hill testified that all of these statements were either lies or based on second-hand information comprised of gossip or innuendo.

Johnson now contends that, by questioning Hill about his prior inconsistent statements without placing those statements into evidence, the prosecutor knowingly violated his due process rights in a similar manner as in *Douglas v. Alabama*, 380 U. S. 415 (85 SCt 1074,

---

[2] Johnson was tried jointly with a co-defendant, Therron Johnson.

13 LE2d 934) (1965). *Douglas*, however, is wholly distinguishable. In *Douglas*, the witness in question invoked the Fifth Amendment and refused to testify. At that point, the prosecutor took the witness's prior statement, which was not entered into evidence, and read it out loud, stopping occasionally to ask the witness if he had said it. Each time, the witness refused to answer. The defendant in *Douglas* contended that this procedure violated the Confrontation Clause of the Sixth Amendment, and the United States Supreme Court agreed, stating:

> In the circumstances of this case, [the defendant's] inability to cross-examine [the State's witness] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. [The witness's] alleged statement that the [defendant] fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of [the defendant's] act and of the requisite intent to murder. Although the Solicitor's reading of [the witness's] alleged statement, and [the witness's] refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that [the witness] in fact made the statement; and [the witness's] reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. Since the Solicitor was not a witness, the inference from his reading that [the witness] made the statement could not be tested by cross-examination. Similarly, [the witness] could not be cross-examined on a statement imputed to but not admitted by him. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor's questioning of [the witness] and [the witness's] refusal to answer as proving the truth of [the witness's] alleged confession. But since their evidence tended to show only that [the witness] made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of [the witness] to test the truth of the statement itself. Hence, effective confrontation of [the witness] was possible only if [the witness] affirmed the statement as his.

(Citations omitted.) Id. at 419-420 (I).

In stark contrast, Hill took the stand in this case, admitted that he had previously talked with police, and testified that his previous statements were based on lies and rumors — *testimony that actually inured to Johnson's benefit.* Thereafter, the State failed to place Hill's prior recorded statement into evidence, and, as a result, Johnson had the ability to argue to the jury that Hill was not credible and that the only evidence was that he was an admitted liar.[3] The transcript shows that both Johnson and his co-defendant argued this point repeatedly. Therefore, the record does not support Johnson's claim that his due process rights were violated in an analogous manner to *Douglas.*

Likewise, the record does not support Johnson's claim that his conviction was premised on perjured testimony presented to jurors through prosecutorial misconduct. Johnson surmises that, despite the fact that Hill failed a lie detector test given to him by the State, the prosecutor called Hill to the stand to improperly present lies as truth. The transcript reveals, however, that the State did nothing to hide the results of Hill's lie detector test, and there are absolutely no indicia of any prosecutorial misconduct, only Johnson's rank speculation. This claim, therefore, also fails.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2013.

*Donna A. Seagraves,* for appellant.

*David P. White, District Attorney, Leon Jourolmon, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.

---

[3] In fact, Johnson's co-defendant took advantage of this and argued to the jury that the prosecutor was unwilling to place any of Hill's prior statements into evidence because he knew that they were lies.