313 Ga. 325
FINAL COPY

S22A0210.  WILLIAMS v. THE STATE.

Boggs, Presiding Justice.

After a 2017 jury trial, Tahja Tayshawn Williams was found guilty of malice murder and other crimes arising out of the death of Keaira Palmer and the wounding of Stefon Cook in a drive-by shooting.[1] He appeals, asserting four enumerations of error: (1) the

---

[1] The crimes occurred in the early morning hours of August 3, 2016. On October 27, 2016, a DeKalb County grand jury indicted Williams and six others, individually and as parties to the crimes, for malice murder, felony murder, three counts of aggravated assault, violation of the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq. (the "Gang Act"), and possession of a firearm during the commission of a felony. One count of aggravated assault, on Ahmad Lee, was nolle prossed. Williams was tried alone before a jury from December 11 to 15, 2017, and found guilty of all remaining charges. On December 15, 2017, Williams was sentenced to serve life in prison without the possibility of parole for malice murder, 20 years in prison to serve concurrently for the aggravated assault on Cook, 15 years in prison to serve concurrently for the Gang Act offense, and five years to serve consecutively for the firearm charge. The trial court merged the remaining aggravated assault count into the malice murder conviction, and the felony murder count was vacated by operation of law. On January 3, 2018, Williams' trial counsel filed a timely motion for new trial, which was amended by appellate counsel on January 8 and 16, 2020. The parties agreed that the motion for new trial would be decided on the briefs, and the motion was denied on April 30, 2021. Williams' notice of appeal was filed on May 19, 2021, and

evidence was insufficient in three respects: it merely showed Williams' presence, it supported his claim of justification, and it failed to corroborate accomplice testimony; (2) the trial court erred in denying his motion in limine to exclude jail calls to which Williams was a party; (3) the trial court erred in denying his motion for mistrial when a co-defendant refused to answer certain questions; and (4) the trial court improperly instructed the jury that it could find Williams guilty of felony murder and not the underlying aggravated assault. We conclude that the evidence was sufficient to support Williams' convictions, the jury was authorized to reject Williams' claim of justification, and the accomplice testimony was corroborated. There was no error in denying Williams' motion to exclude evidence of a jail telephone call as hearsay because it was an admission of a party opponent. Williams' motion for mistrial on the ground that a witness refused to answer questions was properly denied because Williams had the opportunity for a full and complete

the case was docketed in this Court to the term beginning in December 2021 and submitted for a decision on the briefs.

cross-examination of the witness. Finally, Williams' contention that the trial court improperly instructed the jury is moot. We therefore affirm.

Construed to support the jury's verdict, the evidence showed that late in the evening of August 2, 2016, Williams, a "Double OG" or leader in the Six Deuce Brims gang (a subset of the Bloods), picked up fellow gang members Rynesha Lucas and co-indictees Ivanna Patrick and Roderick Jackson. After obtaining some money, they drove to an apartment complex to meet more gang members: co-indictees Sharod Jackson, Michael Anthony Miller, Roderick Harris, and Tareco Jenkins. In the meeting that followed, Williams told the others that he wanted to retaliate against the G-Shines, a rival gang, because G-Shine members had committed various crimes against Six Deuce members, including robbing Williams of several firearms. Gang members testified that Williams decided the group would obtain firearms and then "ride on" (that is, "pull up on your enemy and shoot") the G-Shine members at their customary gathering place, a convenience store on Glenwood Road in DeKalb

3

County.

The Six Deuce members acquired a number of firearms from an unidentified individual in the apartment complex and took two vehicles — a stolen green Lexus driven by Sharod Jackson with Patrick, Harris, and Miller as passengers, and a black car driven by Williams with Lucas, Roderick Jackson, and Jenkins as passengers. Shortly after midnight, the two cars, with Williams leading, drove past the convenience store, where the G-Shine members were gathered outside. Williams then turned his car around and led the group back past the front of the store, and occupants of both cars began shooting at the crowd in the parking lot. The first shots were fired from Williams' car, and some in the crowd began returning fire. Police officers later found two groups of spent shell casings on the ground: one in the road and one in the parking lot, from at least seven different firearms in a variety of calibers. Several people in the parking lot were hit: Palmer was killed by a bullet that severed her spinal cord, Cook was shot in the neck but survived, and Ahmed

Lee was struck in the leg.[2] Surveillance video of the incident was played for the jury.

During the incident, the Lexus was disabled, either from gunfire or from hitting the curb, and the occupants jumped out and ran away. Williams drove away and, after receiving telephone calls from the occupants of the Lexus, drove to several locations to pick them up. Later in the day, Williams was a passenger in a car that was pulled over by the police in a traffic stop. Williams told the driver to drive away, but she refused, and Williams fled on foot, leaving behind a suitcase and duffel bag.

The State indicted all the participants in the drive-by shooting except Lucas, who was 15 years old at the time of the crimes. The indictment was nolle prossed as to Jenkins, and the remaining defendants pled guilty; all seven of the participants testified at trial.

1. Williams contends that the evidence was insufficient as a matter of constitutional due process to support his convictions,

---

[2] While Williams was indicted for the shooting of Lee, that count of the indictment was nolle prossed.

because he was merely present at the scene and the State did not prove that he was a party to the crimes. He also asserts that the State failed to disprove justification by self-defense beyond a reasonable doubt. Finally, Williams contends that the only evidence connecting him with the crimes was uncorroborated accomplice testimony.

Williams' contention that he did not participate in the drive-by shooting was contradicted by multiple witnesses, primarily the seven other participants in the shooting. The testimony of those witnesses did not always agree, and several witnesses made contradictory statements at trial and were confronted with their earlier statements to police. But evidence was presented that Williams not only planned the shooting but participated in it by driving the lead vehicle, communicating and picking up gang members after the shooting, and later fled from a traffic stop. "Although the eyewitness accounts of the shooting did vary to some extent, it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the

6

evidence." (Citations and punctuation omitted.) *Bighams v. State*, 296 Ga. 267, 268-269 (1) (b) (765 SE2d 917) (2014).

Viewing the evidence in the light most favorable to the verdicts, the jury was authorized to conclude that Williams was a party to the crimes under OCGA § 16-2-20. See *Hood v. State*, 309 Ga. 493, 498 (1) (847 SE2d 172) (2020) ("Conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime, which may be inferred from presence, companionship, and conduct before, during, and after the offense." (Citations and punctuation omitted.)). The trial court gave the pattern jury instruction on parties to a crime,[3] and the jury was authorized to believe the witnesses who testified that Williams was a party to the crimes. See *Blackwell v. State*, 302 Ga. 820, 821-822 (1) (809 SE2d 727) (2018) (holding that when appellant participated in a gunfight in a crowded parking lot, a rational trier of fact could find he was a party to malice murder even

---

[3] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.42.10 (4th ed. 2007, updated July 2021).

though he did not fire the fatal shot).

This evidence, construed in favor of the jury's verdicts, also was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Williams and his companions did not act in self-defense, but rather initiated the conflict. "Issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (Citations and punctuation omitted.) *Butler v. State*, 309 Ga. 755, 758 (1) (848 SE2d 97) (2020).

Likewise, there is no merit to Williams' claim that the testimony of his alleged accomplices was not corroborated as required by OCGA § 24-14-8, because "multiple alleged accomplices may corroborate one another's testimony." (Citation and punctuation omitted.) *Huff v. State*, 300 Ga. 807, 809 (1) (796 SE2d 688) (2017). All seven of the participants in the drive-by shooting testified, and they sufficiently corroborated one another's testimony. Moreover, in its order on Williams' motion for new trial, the trial court noted that the State presented other corroborating evidence,

8

including Williams' flight from the police. See *Fisher v. State*, 309 Ga. 814, 819-820 (2) (a) (848 SE2d 434) (2020) (holding that defendant's flight from police, with other evidence, corroborated accomplice testimony). Whether accomplice testimony has been sufficiently corroborated is a question for the jury, and even slight corroborating evidence of a defendant's participation in a crime is sufficient. See *Raines v. State*, 304 Ga. 582, 588 (2) (a) (820 SE2d 679) (2018).

The evidence as recited above was constitutionally sufficient to support Williams' convictions. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Williams contends the trial court erred in denying his pretrial motion in limine to exclude multiple telephone calls to and from the DeKalb County Jail. Ultimately, at trial the State introduced only one telephone call, which was interpreted for the jury by an expert in gang identification. In that call, made before commission of the crimes at issue here, the caller, a jail inmate, reported to Williams that a member of another gang was attempting

to harm the caller in jail. He asked Williams to intervene on his behalf with the leader of the other gang. Before the call ended, Williams instructed the inmate to get the other gang member on the phone and then set up a three-way conversation with the gang leader. The gang expert testified that the number associated with that leader appeared in Williams' telephone records "an inordinate number" of times.

In his brief on appeal, Williams argues only that his statements during the single call admitted were hearsay. We disagree. As the trial court correctly observed in its order on Williams' motion for new trial, Williams' statements in the jail call were admissions of a party opponent. "Admissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own statement[.]" OCGA § 24-8-801 (d) (2) (A). See also *Lyons v. State*, 309 Ga. 15, 26 (8) (b) (843 SE2d 825) (2020) (holding appellant's statements in voicemail message not excluded by hearsay rule); *Edwards v. State*, 308 Ga. 176, 182 (2) (839 SE2d 599) (2020) (detective's recording of

10

unavailable witness' recording of appellant's telephone call "not excludable as hearsay"). This enumeration of error therefore lacks merit.

3. Williams asserts that he was denied his right to a fair trial when a witness, co-indictee Roderick Jackson, refused to answer certain questions during his testimony. Williams contends the trial court should have granted his motion for mistrial, because the refusal left the jury with the impression that Jackson was afraid to testify because Williams, the only remaining defendant, had threatened him.

"[T]he decision to grant a motion for mistrial lies within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." (Citations and punctuation omitted.) *Jordan v. State*, 305 Ga. 12, 15 (2) (823 SE2d 336) (2019). See also *Thomas v. State*, 311 Ga. 573, 576 (3) (858 SE2d 504) (2021). We conclude that the trial court did not abuse its discretion in denying Williams' motion for mistrial.

Jackson refused to answer several questions on direct examination, but he continued to testify and respond to the State's questions after Williams' motion for mistrial was made and denied. On cross-examination, Jackson again refused to answer certain questions, but acknowledged that he had made statements to the police and that those statements were true. Williams' trial counsel asked Jackson whether he had declined to answer certain questions because he had been threatened by Williams, and Jackson denied that he had been threatened by Williams or by anyone else.[4] Williams' trial counsel also elicited admissions from Jackson that Jackson had entered into a plea agreement to serve 25 years in prison and that he had lied to the police during their investigation, and directly challenged Jackson with regard to his honesty and truthfulness.

Williams relies upon our decision in *Soto v. State*, 285 Ga. 367,

---

[4] The trial court also offered to admit and play for the jury Jackson's recorded statement to police, in which he answered the questions he refused to answer at trial, some of which implicated Williams. Williams did not accept that offer.

369 (2) (677 SE2d 95) (2009), to argue that his Sixth Amendment right of confrontation was violated. The facts in *Soto* were significantly different from those presented here, however. Soto and his co-defendant, Wiedeman, were charged with the murder of Wiedeman's girlfriend. Wiedeman pled guilty, and the State called him as a witness at Soto's trial, but in the middle of the State's direct examination Wiedeman suddenly said that he alone committed the murder. Wiedeman then refused to answer any more questions from the State or to be cross-examined by the defense, despite being threatened with contempt by the trial court. At that point, the trial court allowed the State to introduce Wiedeman's prior inconsistent statements to the police and to a fellow prisoner incriminating Soto. See id. at 368 (2). Soto appealed, asserting that his Sixth Amendment right of confrontation was violated, and this Court concluded that the trial court erred in admitting the prior statements because Soto was completely unable to cross-examine Wiedeman:

Here, defendant was given no opportunity whatsoever to

13

> cross-examine Wiedeman because Wiedeman "shut down" in the midst of direct examination and refused to answer further questions posed by either the prosecution or the defense. We must conclude, therefore, that the admission of Wiedeman's prior statements violated defendant's right of confrontation.

Id. at 370 (2) (b).

In this case, unlike the witness in *Soto*, Jackson did not decline to testify altogether. As we observed in *Johnson v. State*, 310 Ga. 685 (853 SE2d 635) (2021), "[t]he main and essential purpose of the right of confrontation is to secure for the opponent the opportunity of cross-examination." (Citations and punctuation omitted.) Id. at 689 (2). Here, Williams was able to conduct a thorough cross-examination, and Jackson's testimony in many respects "actually inured to [Williams'] benefit," *Johnson v. State*, 293 Ga. 530, 533 (2) (748 SE2d 434) (2013). The trial court did not abuse its broad discretion in denying a motion for mistrial under these circumstances.[5]

---

[5] Williams also contends that the trial court should have stricken all of Jackson's testimony. But Williams did not seek to have the testimony stricken at trial. See *Soto*, 285 Ga. at 369 (2) (rejecting claim where "neither party sought that remedy" below).

14

4. Finally, Williams asserts error in the trial court's response to a question from the jury. During deliberations, the jury sent a note to the court saying, "We need clarity on whether you can find someone guilty of felony murder but not aggravated assault. Can you have one without the other?" While discussing how to respond to the question, Williams' trial counsel and the trial court agreed that the jury was inquiring about the aggravated assault count that was the predicate for the felony murder count. After further discussion with counsel, the trial court instructed the jury over Williams' objection, "The answer . . . based on our research and my understanding of the law is yes."

Williams contends this instruction was incorrect and may have confused the jury. However, we need not consider that contention. Because the jury found Williams guilty of malice murder, the felony murder count was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 372 (5) (434 SE2d 479) (1993), and the aggravated assault that formed the predicate for the felony murder count was merged into the malice murder conviction. Any enumerated error

with regard to jury instructions on felony murder or the underlying aggravated assault is therefore moot. See *Walker v. State*, 308 Ga. 33, 36 (2) n.3 (838 SE2d 792) (2020) (alleged errors in jury instructions on felony murder, aggravated assault, and cruelty to children moot because defendant convicted of malice murder).

*Judgment affirmed. All the Justices concur.*

Decided February 15, 2022.

Murder. DeKalb Superior Court. Before Judge Scott.

*The Merchant Law Firm, Ashleigh B. Merchant, John B. Merchant III*, for appellant.

*Sherry Boston, District Attorney, C. Lance Cross, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.