NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 21, 2023

S23A0110.  MEADOWS v. THE STATE.

ELLINGTON, Justice.

Roden Meadows appeals his convictions for murder, aggravated assault, and possession of a firearm during the commission of a felony arising from the fatal shooting of Jason Williams.[1] On appeal, Meadows contends that the evidence was

---

[1] The crimes occurred on May 15, 2018. On August 14, 2018, Meadows was indicted by a DeKalb County grand jury for malice murder (Count 1); felony murder (Count 2); aggravated assault with a deadly weapon (Count 3); and possession of a firearm during the commission of a felony (Count 4). In August 2019, a jury found Meadows guilty on all counts. On September 10, 2019, the trial court sentenced Meadows to life imprisonment on Count 1 and a consecutive 5-year sentence on Count 4 and purported to both merge Count 3 into Count 1 and also impose a 20-year sentence on Count 3 to run concurrent with Count 1. Count 2 was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Meadows filed a motion for a new trial on October 4, 2019, which was amended by new counsel on March 22, 2021. After both the State and Meadows waived an evidentiary hearing, the trial court denied the motion for new trial on June 24, 2022. Meadows filed a timely notice of appeal. The case was docketed in this Court to the term beginning in December 2022 and submitted for a decision on the briefs.

constitutionally insufficient and that this Court should exercise its authority under OCGA §§ 5-5-20 and 5-5-21 as the "thirteenth juror" and grant him a new trial. He also argues that the trial court erred in three instances by failing to rebuke the prosecutor for making improper and prejudicial statements during closing arguments. We conclude that the evidence is sufficient to sustain Meadows's convictions and that this Court does not have authority under the cited statutory law to sit as the "thirteenth juror." We also conclude that Meadows failed to preserve his challenges to two of the prosecutor's statements during closing arguments, and with respect to the third instance, even if the trial court erred by failing to rebuke the prosecutor, any error was harmless. Although not raised by Meadows on appeal, we have identified in the record a merger error related to the sentence the trial court entered on Count 3 of the indictment. Because we cannot resolve this sentencing issue based on the record before us, we vacate the merger of and sentence on Count 3 and remand to the trial court for further proceedings.

1. Viewed in the light most favorable to the verdicts, the

evidence presented at trial showed the following. On the day of the crimes, Meadows and an unidentified male met Williams in the parking lot of a DeKalb County grocery store. The three men left the grocery store parking lot in a blue sedan driven by the unidentified male, with Meadows seated in the front passenger seat and Williams seated in the rear seat on the passenger's side. The three men drove to a nearby gas station, where Meadows went inside the store to make a purchase, leaving the driver and Williams inside the car. While Meadows was in the store, the driver stood near the rear of the car and pumped gas until Meadows returned, spoke to the driver, and remained at the rear of the car pumping gas while the driver returned to the car. Meanwhile, Williams got out of the car and walked into the store. When Williams went in the store, Meadows walked around the car to the rear passenger side where Williams had been seated and looked inside the car. Meadows then finished pumping the gas and returned to the front passenger seat. Williams returned to the car after a few minutes, got into the back seat, again sitting behind Meadows, and within 20 seconds of

3

returning to the car, Williams was shot in the chest. After he was shot, Williams opened the car door and ran a short distance before he fell to the ground as Meadows and the unidentified driver sped away with the car's rear passenger door still open. Williams died at the scene.

Police were able to identify Meadows as one of the men inside the car at the time of the shooting based on video surveillance and evidence that Meadows's debit card and PIN number were used inside the gas station minutes before the shooting. Investigators also discovered on Williams's cellular phone an exchange of 36 text messages with a telephone number ending in "2483" on the day of the shooting. In this exchange, Williams's phone received messages about a plan to meet at the DeKalb County grocery store to conduct a financial transaction. Just before 4:00 p.m. on the day of the crimes, Williams's phone received a final text message from the phone number ending in "2483" stating, "Pulling in" to the grocery store parking lot.

After the shooting, a police officer interviewed Marcus Chivers,

Meadows's step-brother. Chivers told the officer that Meadows owned a .40-caliber pistol that looked similar to the officer's Glock pistol. During the search of Meadows's residence, investigators discovered a box of .40-caliber hollow-point Winchester bullets in Meadows's bedroom. At trial, GBI forensic firearms expert testified that the bullet recovered from Williams's body was a .40-caliber hollow-point bullet fired from a Smith & Wesson pistol. She stated the bullet could have been manufactured by Winchester or Remington, but her analysis was inconclusive on the exact manufacturer.

The medical examiner testified that Williams died as the result of a single gunshot wound from a .40-caliber bullet. An autopsy revealed an entrance and exit wound on Williams's forearm and an atypical entrance wound to the left side of Williams's chest, the shape of which indicated the bullet had passed through an object prior to entering Williams's chest. Based on the trajectory of the bullet and characteristics of the wounds, the medical examiner opined that a single bullet entered Williams's forearm, exited the

5

forearm, and entered his chest. The medical examiner testified that she believed Williams was shot while in a defensive position with his arm raised in front of his body, and based on the absence of soot or stippling near the wounds, that the bullet was fired from a distance of at least three to four feet.

2. Meadows contends that the evidence was constitutionally insufficient to support his convictions for malice murder and possession of a firearm during the commission of a felony. We disagree.

When evaluating the sufficiency of the evidence as a matter of federal constitutional due process, we view the evidence presented at trial in the light most favorable to the verdicts and consider whether it was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Moore v. State*, 311 Ga. 506, 508 (2) (858 SE2d 676) (2021). This "limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the

6

evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020) (citation and punctuation omitted).

Meadows asserts that the evidence presented at trial pointed to the driver being responsible for shooting Williams and that he was merely present in the car when Williams was shot. In support of this argument, Meadows points to the medical examiner's testimony that no gun powder or stippling was found on Williams's body and that, in her opinion, the gun used to shoot Williams was fired from three to four feet away. Meadows argues that this evidence shows it was highly unlikely that Meadows shot Williams from the front passenger seat.

When properly viewed in the light most favorable to the verdicts, however, the evidence presented at trial showed that Meadows and the unidentified driver actively arranged to meet Williams at a designated parking lot, and the three men then drove to a gas station, where the driver and Meadows conversed and

7

pumped gas while Williams went into the store. When Williams returned to the car, someone inside the car, either Meadows or the unidentified driver, shot Williams using a .40-caliber pistol loaded with .40-caliber hollow-point bullets manufactured by either Winchester or Remington. Meadows then fled the scene with the driver of the car, without rendering any aid or assistance to Williams. In addition, the evidence showed that Meadows was known to own a .40-caliber pistol like the one used in the shooting and .40-caliber hollow-point Winchester bullets were discovered by police in Meadows's bedroom. That evidence was sufficient for the jury to find Meadows guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony as either a direct participant or, if the driver was the actual shooter, as Meadows contends, as a party to the crimes. See *Jackson*, 443 U. S. at 319 (III) (B); OCGA § 16-2-20 (b) (3) and (4) (a person is a party to a crime if he "aids or abets in the commission of the crime" or intentionally "advises, encourages, hires, counsels, or procures another to commit the crime"); *Williams v. State*, 313 Ga. 325, 328

8

(1) (869 SE2d 389) (2022) (conviction as a party to the crime requires evidence of common intent and may be inferred from "presence, companionship, and conduct before, during, and after the offense") (citation and punctuation omitted); *Rawls v. State*, 310 Ga. 209, 218-219 (4) (a) (850 SE2d 90) (2020) (fact that a suspect fled the scene of the crime points to the question of guilt in a circumstantial manner).

3. Meadows next argues that the State failed to prove the .40-caliber bullets found in his bedroom were from the same manufacturer as the bullets used in the shooting, and therefore, this Court should exercise its discretion as the thirteenth juror under OCGA §§ 5-5-20 and 5-5-21[2] and grant him a new trial. This argument has no merit, however, because the text of the statute makes clear that this Court does not have authority to grant a motion for new trial based on OCGA §§ 5-5-20 or 5-5-21, a conclusion

_____

[2] The grounds set forth in OCGA §§ 5-5-20 and 5-5-21 authorize "the trial judge to sit as a 'thirteenth juror' and to exercise his or her discretion to weigh the evidence on a motion for new trial alleging these general grounds." *State v. Holmes*, 304 Ga. 524, 531 (3) (820 SE2d 26) (2018). Under these provisions, a trial judge, not the appellate courts, may grant a new trial if the trial judge concludes the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21.

that our well-established case law confirms. See, e.g., *Henderson v. State*, 304 Ga. 733, 734 (2) (822 SE2d 228) (2018) (rejecting appellant's request to grant a new trial based on OCGA §§ 5-5-20 and 5-5-21 because appellate courts "have no authority to grant such a request"); *Willis v. State*, 263 Ga. 597, 598 (1) (436 SE2d 204) (1993) (whether to grant a new trial under OCGA § 5-5-21 is solely in the discretion of the trial court; an appellate court does not have the same discretion).

4. During closing arguments, the prosecutor, in three separate instances, made statements which prompted defense counsel to object on the ground that the statements were improper and highly prejudicial. On appeal, Meadows asserts that the trial court committed reversible error when it sustained his objections but failed to rebuke, or sufficiently rebuke, the prosecutor. We disagree in each of the challenged instances.

Under OCGA § 17-8-75,

> [w]here counsel in the hearing of the jury makes statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and

prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

"A trial court has broad discretion when responding to an alleged violation of OCGA § 17-8-75," *Parker v. State*, 276 Ga. 598, 599 (3) (581 SE2d 7) (2003), and any error in "not fulfilling its duty under OCGA § 17-8-75 is subject to harmless error analysis." *Stephens v. State*, 307 Ga. 731, 734 (1) (a) n.4 (838 SE2d 275) (2020).

(a) During closing argument, Meadows objected and moved for a mistrial based on the prosecutor's argument referencing trial evidence showing that Meadows was known to carry a .40-caliber pistol, .40-caliber bullets were found in his bedroom, and the gun used to shoot Williams was not found. Meadows argued this statement was improper because evidence related to a .40-caliber pistol investigators found during a search of Meadows's car was determined by the trial court in pre-trial proceedings to be inadmissible at trial. Following Meadows's objection, the trial court

11

and the parties engaged in a long colloquy outside the presence of the jury, after which, defense counsel withdrew his motion for mistrial and the court sustained Meadows's objection. The trial court then stated it would instruct the jury to disregard the prosecutor's statements about the fact that the gun used in the shooting was not presented as evidence at trial, and defense counsel agreed, stating, "Yes, judge, that's what I would ask." When the jury returned to the court room, the court instructed the jury that Meadows's objection was sustained, that closing arguments are not evidence, and that they should disregard the prosecutor's statements about the absence of the gun.

Under these circumstances, we need not determine whether the trial court erred by failing to rebuke the prosecutor because the trial court gave the agreed upon curative jury instructions, after which Meadows failed to request any additional relief. Having acquiesced to the remedy fashioned by the trial court, Meadows cannot complain about the trial court's failure to further rebuke the prosecutor. See *Stephens*, 307 Ga. at 733-734 (1) (a) ("Where the

12

objection to the prejudicial matter is sustained, the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant.") (citation and punctuation omitted); *Ingram v. State*, 290 Ga. 500, 503-504 (2) (722 SE2d 714) (2012) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing.") (citation and punctuation omitted); *Parker*, 276 Ga. at 599 (3) ("A trial court's ruling will not be reversed for failing to go further than the objecting party requests.").

(b) Meadows also contends the trial court erred when it failed to rebuke the prosecutor after she stated in closing argument that the State had been unable to retrieve the contents of certain electronic devices investigators discovered in Meadows's bedroom and that if investigators had found any evidence in the devices, it would have been presented to the jury. These statements were made in response to defense counsel's argument that the State had failed to properly investigate the crimes or connect the electronic devices to Meadows. Pretermitting whether this argument was improper

13

under OCGA § 17-8-75, a trial court has no duty to rebuke a prosecutor unless specifically requested by the defendant. See *Cheley v. State*, 299 Ga. 88, 95 (5) (786 SE2d 642) (2016) ("[I]t is well established that a trial court has no duty to rebuke a prosecutor under [OCGA § 17-8-75] unless specifically requested by the defendant."); *Woodham v. State*, 263 Ga. 580 (1) (a) (439 SE2d 471) (1993) ("trial court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant"). Here, Meadows's objection to the prosecutor's comment about the electronic devices was sustained, and Meadows did not ask the court to rebuke the prosecutor or for any other corrective action. Accordingly, the trial court, in this instance, had no duty to rebuke the prosecutor.

(c) Finally, Meadows asserts the trial court erred by failing to rebuke the prosecutor for improperly commenting on Meadows's right to remain silent during closing arguments. The record shows that during this portion of the State's closing, the prosecutor argued, based on reasonable inferences from the evidence, that Meadows

14

was the person who texted Williams and arranged to meet him in the grocery store parking lot and that Meadows knew the driver of the blue sedan. The prosecutor stated:

> How did the person, the driver, know to come and pick up Mr. Meadows and the victim? Somebody had to have contacted this person, reasonably, right? Unless they're saying it's an Uber driver . . . people don't, normally, sit in the front seat of a car of a person that they don't know. But they do with a person that they do know. They also don't normally pay for gas for people they don't know. But they do for people that they do know.
>
> They also don't go around the other side and help pump gas in the blue sedan for people they don't know. But they do for people that they do know. So it's reasonable to assume [Meadows] knew who the driver was and knows who the driver is of that blue sedan.

Defense counsel objected on the ground that the State was commenting on Meadows's right to remain silent and asked that the court admonish the prosecutor in front of the jury and give a charge on a defendant's choice not to testify. The trial court sustained the objection and charged the jury that closing arguments are not evidence, that a defendant does not have to present any evidence nor testify, and that if a defendant chooses not to testify, the jury was

15

not to consider that in any way in making its decision. The trial court also instructed the jury in its final charge that "[e]vidence does not include . . . opening or closing remarks of the attorneys," and the "defendant does not have to present any evidence nor testify."

On this record, even assuming the trial court erred in this instance by not rebuking the prosecutor under OCGA § 17-8-75, any error was harmless. Considering the trial court's instructions and the strong evidence of Meadows's guilt, including the gas station video showing Meadows's conduct before and after the crimes, we conclude "it is highly probable that neither [these] statement[s] by the prosecutor in closing argument, nor any alleged failure of the trial court to comply with OCGA § 17-8-75, contributed to the verdict." *Taylor v. State*, 303 Ga. 583, 587 (3) (814 SE2d 302) (2018) (any error by prosecutor in commenting on the defendant's right to remain silent was harmless considering overwhelming evidence of the defendant's guilt and trial court's instruction to jury that statements of counsel during closing are not evidence) (citation and punctuation omitted).

5. Although not raised by Meadows on appeal, the record reflects that the trial court merged Count 3, the aggravated assault count, into Count 1, the malice murder count, but also imposed a 20-year sentence on Count 3. A separate judgment of conviction and sentence on Count 3 would be authorized, however, only if the indictment averred and the State proved that Meadows committed an aggravated assault independent of the act that resulted in Williams's death. See *Nazario v. State*, 293 Ga. 480, 480 (746 SE2d 109) (2013) ("A conviction that merges with another conviction is void - a nullity- and a sentence imposed on such a void conviction is illegal and will be vacated if noticed by this Court . . . ."); *Culpepper v. State*, 289 Ga. 736, 738-739 (715 SE2d 155) (2011) (explaining that a non-fatal aggravated assault and a fatal aggravated assault that are separated by a "deliberate interval" may support separate convictions and  sentences). These circumstances can often require us to vacate a defendant's sentence and remand to the trial court for new findings and resentencing. See *Wheeler v. State*, 314 Ga. 484, 487 (2) (877 SE2d 565) (2022). Remand is not necessary in this

instance, however, because the indictment charged Meadows with both murder and aggravated assault by alleging that he shot Williams and there was no evidence showing that the shooting occurred other than in a single transaction. Accordingly, Count 3 necessarily merged into the malice murder conviction as a matter of fact, and the separate sentence for aggravated assault must be vacated. See *Miller v. State*, 309 Ga. 549, 552 (3) (847 SE2d 344) (2020) (When there is "no evidence to suggest the occurrence of an aggravated assault independent of the act which caused the victim's death[,] . . . a jury's guilty verdict on the aggravated assault merges as a matter of fact with the malice murder verdict for sentencing purposes.") (citation and punctuation omitted).

*Judgment affirmed and sentence vacated in part. All the Justices concur.*