**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 9, 2025

S25A1433.  JOHNSON v. STATE.

LAND, Justice.

Appellant McKinley Johnson challenges his 2024 convictions for malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Richard Antoine and injuries to Wyman Lott.[1] Johnson contends

---

[1] The crimes occurred on February 21, 2023. On May 25, 2023, a Fulton County grand jury indicted Johnson and his co-defendant, Antonio Spear, for malice murder (Count 1), felony murder (Count 2), two counts of aggravated assault with a deadly weapon against Antoine and Lott (Counts 3 and 4), aggravated assault against Antoine by striking him with a firearm (Count 5), battery against Antoine (Count 6), and possession of a firearm during the commission of a felony (Count 7). An additional defendant, Teisha Ponder, was charged with one count of tampering with evidence (Count 8) and pleaded guilty prior to trial. Spear and Johnson were not jointly tried, and Spear's case is not a part of this appeal.

At a trial from January 29 to 31, 2024, the jury found Johnson guilty of all charges. The trial court sentenced Johnson to life in prison with the possibility of parole for Count 1; 20 years to serve in prison for Count 4, to be served concurrently with Count 1; 20 years to serve in prison for Count 5, to be served concurrently with Count 1; 12 months to serve in prison for Count 6, to be served concurrently with Count 1; and a suspended 5 year sentence for

that the evidence at trial was insufficient for a jury to find him guilty of all charges; that the State's opening statement was improper; that the State's closing argument was improper; and that the trial court erred by not granting Johnson's motion for a mistrial. For the following reasons, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows as follows. On February 21, 2023, two employees with Rogers Mechanical were driving in their company van in Fulton County. Antoine was driving, and Lott was a passenger in the van. The company van contained cameras operated by the company, which recorded video of the interior and exterior of the van. As

Count 7, to be served consecutively to Count 1. Count 2 was vacated by operation of law. We note that the trial court erred at sentencing by vacating Count 3 by operation of law, rather than merging Count 3 into Count 1. See *Farris v. State*, 290 Ga. 323, 325 (2012) (conviction "for aggravated assault by using a deadly weapon to shoot the victim … merges as a matter of fact into the malice murder conviction.") However, this error in nomenclature does not affect Johnson's sentence and is otherwise harmless. See, e.g., *Dixon v. State*, 302 Ga. 691, 696–98 (2017).

On February 2, 2024, Johnson filed a timely motion for new trial, which was amended by new counsel. After a hearing, the trial court denied Johnson's motion for new trial on June 10, 2025. On June 23, 2025, Johnson filed a timely notice of appeal and the case was docketed in this Court to the August 2025 term and orally argued on November 4, 2025.

Antoine approached the traffic light at the intersection of Flat Shoals Road and Mallory Road in the left turn lane, a stopped vehicle prevented him from turning left at the intersection. Antoine then moved to the right of the stopped vehicle and proceeded forward at a "normal" speed through the intersection.

A Dodge Charger that had been behind Antoine's van then pulled up beside them. Johnson was driving the Charger, Spear was in the front passenger seat, and Ponder, who owned the Charger, and another woman were sitting in the rear seats. Spear and Johnson began yelling and cursing at Antoine, and Antoine rolled down the window and waved his hand to apologize. Spear asked Antoine if he thought they were "playing with" him, and Johnson, who was "kind of mad," then used the Charger to cut off Antoine's van from proceeding forward in the roadway.

Johnson and Spear, who was armed with a gun, exited the Charger. Johnson ran to the driver's side of the van and began to punch Antoine. Lott took off his seat belt to help Antoine before noticing Spear standing next to Johnson at the driver's side window.

Spear then pulled out a firearm, reached into the van, and pointed the gun at Lott and then Antoine. Lott testified at trial that Spear "had a crazy look on his face" and that he was in fear for his life, so he stayed in the van and put his hands up. When Johnson returned to the van, he pushed Spear out of the way, hit Antoine again several more times, and then stepped to the side. Spear then hit Antoine with the gun. As Antoine began to drive the van forward, Spear shot him in the neck. Antoine stopped the van and put it in park. Lott saw blood on Antoine's neck, got out of the van, ran to Antoine's side of the van, and called 911. Lott attempted life-saving measures until law enforcement arrived but Antoine died soon after. A female caller also called 911 and reported hearing the gunshot and seeing the Charger leave the scene of the shooting. At trial, Ponder claimed that she did not see Spear shoot Antoine but admitted that she was able to see Spear's gun from where she was standing, stating that she "wasn't paying attention to the gun." Immediately after the shooting, Spear got back into the Charger and stated that "he th[ought] he shot the man." Video from the van showed the Charger

4

driving away from the scene several seconds after the shooting. No one in the Charger called 911, and Ponder dropped Johnson and Spear off at Spear's house. Ponder later had the Charger repainted at Spear's direction.

A South Fulton Police Department detective obtained the Charger's license plate number from traffic cameras. She later located the Charger and spoke with Ponder, who identified Johnson and Spear as the assailants. The detective also obtained video from the van. The firearm used by Spear was visible in the video and the detective identified it as a .22 - caliber handgun.

An autopsy of Antoine's body concluded that Antoine suffered a close-range gunshot wound from a single bullet, which entered and exited his left shoulder before re-entering at the left side of his neck. The doctor who performed the autopsy testified at trial that Antoine's cause of death was the gunshot wound to his neck. Johnson's trial counsel objected, stating:

> [J]ust in terms of making a record, I would generally object being that opening statements are generally what we expect the evidence to be, not for the purpose of

5

already pre-tendering evidence. ... I can only think showing it is now somehow blending into argument, which is not the purpose of opening statement. So I would just object. I understand it's gonna come in at trial, but to do it already at the opening, I think it's just premature, and I would object for the record.

The trial court overruled trial counsel's objection and noted that Johnson would be able to move for a mistrial if the evidence used during the prosecutor's opening statement was not admitted at trial. The next morning, trial counsel renewed his objection, objecting generally to "the State presenting various videos, pictures, [and] things of that nature in opening." The trial court noted trial counsel's objection for the record.

During its opening statement, the prosecutor said the following:

Prosecutor: I got a picture up there of a campfire. ... If someone's camping in the woods and they set a fire, who's responsible for putting it out, okay? If that fire gets out of control, let's say a tree catches on fire, what's that person['s] responsibility then? And let's say that same person he puts wood on the fire, gas on the fire—

Defense Counsel: I'll object. This is argumentative. It's not—

6

Trial Court: I don't think it's gotten there quite yet … Overruled.

Prosecutor: And he's putting gas on the fire. What does that say about that person's intent with regard to the forest, okay? That example is analogous to what we have here … Because on February 21, 2023, in your county, this defendant set off, initiated a chain of violent events that escalated, and when it escalated, he did nothing to stop it. Instead, he participated in it, perpetuated it, and that led to the death of Mr. Richard Antoine and the aggravated assault of Mr. Wyman Lott.

Later in its opening statement, the prosecutor stated that after Spear held the victims at gunpoint and tried to rob Antoine, Johnson threw "gas on the fire." Trial counsel again objected to the statement as argumentative, and the trial court sustained the objection and reminded the jury that "opening statements are not evidence." Trial counsel objected on authentication grounds, arguing that Lott was not the evidence custodian and had not testified about how the recording equipment in the van worked or that the exhibit contained a complete copy of the video. The trial court allowed trial counsel to voir dire Lott on the issue, after which trial counsel renewed his objection. The trial court overruled the objection and allowed the

State to publish the video.

"[W]hen making opening statements, the prosecutor is allowed to state what the evidence is expected to show and the content of such statements is within the broad discretion of the trial court." *Menefee v. State*, 301 Ga. 505, 511 (2017) (citation omitted). Here, Johnson's objection to the prosecutor's use of the fire analogy as argumentative was sustained, and the trial court instructed the jury that opening statements are not evidence. After the close of evidence, the trial court again instructed the jury that opening statements are not evidence and charged the jury on the defendant's presumption of innocence and the State's burden of proof. Johnson now argues that the trial court's instruction to the jury that opening statements are not evidence was insufficient. Even assuming that the prosecutor's analogy was inappropriately argumentative for opening statement, it is well established that "where the objection to the prejudicial matter is sustained ... the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant." *Fleming v. State*, 306 Ga. 240, 243

8

(2019) (citation and punctuation omitted). Johnson made no such request here and as noted, the trial court did in fact give curative instructions. Under the circumstances, the trial court had no duty to give additional curative instructions or take any further corrective action, including a rebuke of the prosecutor. See *Meadows v. State*, 316 Ga. 22, 27 (2023) (trial court "had no duty to rebuke the prosecutor" where court sustained defendant's objection and defendant "did not ask the court to rebuke the prosecutor or for any other corrective action").

Nor did the trial court abuse its discretion in allowing the prosecutor to use screenshots from the van's video footage[2] during opening statements. Visual aids are permissible during opening statements. See *McGee v. State*, 272 Ga. 363, 363 (2000) (drawing of the floor plan of the residence wherein the victim was killed, showing its entrances and the location of the victim's body, was "a

---

[2] The transcript does not reflect whether any video footage was played during opening statement. Both in its briefing and at oral argument, the State represented that it used two still frames from State's Exhibit 3 for demonstrative purposes during opening statement. **«DA Brief 16»**

permissible part of the opening statement, as its purpose is to assist the jury to understand and to remember the evidence"); *Highfield v. State*, 246 Ga. 478, 482 (1980) (State's chalkboard visual aid of names of the participants in the crimes and witnesses was not improper as it "enabled the jury to better remember the rather numerous cast of characters involved in the trial"). In addition, the video was properly authenticated by Lott and admitted at trial. See *Pearson v. State*, 311 Ga. 26, 31-32 (2021) (trial court did not abuse its discretion in concluding that witness properly authenticated video where witness testified that she personally witnessed the events recorded and that the video accurately portrayed them). Accordingly, this enumeration fails.

2.     Johnson argues that certain comments made during the State's closing argument were improper.

During closing argument, the prosecutor told the jury, "I submit you can make a reasonable inference that Mr. Johnson knew that Mr. Spear had that gun on him." Trial counsel objected, and the trial court overruled the objection. The State later argued the

following:

> [E]very witness said they saw the gun. You saw the gun. It's what kept … Mr. Lott and Mr. Antoine inside the vehicle. It was that gun. We know he saw it. That's why he's able to turn his back to them after he just got through beating on him because he knows he doesn't have to worry because those two people are being held at gunpoint.

Johnson's trial counsel approached the bench and argued that "[i]t was [his] intent … once the State's done [to] move for a mistrial based on" the State's contention that there was evidence that Johnson "knew Spear[] had a gun prior to the actual situation happening" and that he thought the State's comments "would constitute a mistrial." After the State explained that the jury could make a reasonable inference about Johnson's knowledge based on the evidence, the trial court ruled that the objection was "preserved for the record," that the State's comment did not "rise[] to the level where we've reach[ed] a mistrial," and that it was "certainly willing to give, again, the same curative instruction [it's] been giving throughout this closing." Trial counsel indicated that it was his intention to at least "preserve it on the record" and asked for a

11

curative instruction. At the end of closing argument, the trial court instructed the jury that "the inferences that [counsel] are urging you to accept, are just that and aren't binding on your evidence in any way."

Attorneys are granted a "wide latitude" during closing arguments. See *Arnold v. State*, 309 Ga. 573, 577 (2020).

> A closing argument is to be judged in the context in which it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

*Menefee*, 301 Ga. at 511 (cleaned up). Here, the State's argument that jurors could infer that Johnson knew Spear had a gun was based on Lott's testimony about seeing the gun and being in fear for his life as well as the visibility of the gun in the video footage. Thus, the State's argument was "based on permissible inferences and legitimately supported by the facts in evidence" about the lead up to

the shooting and was therefore not improper.[3] See *Gaston v. State*, 307 Ga. 634, 640 (2020) (prosecutor's argument that appellant sent his girlfriend a text message asking for a gun prior to the victim's shooting death was within the bounds of permissible argument). See also *Menefee*, 301 Ga. at 515–16 (based on the ballistics evidence, witness testimony, and lack of gun residue on victim's hands, it was not improper for the prosecutor to argue during closing arguments that certain weapons had not been fired). Johnson's claim therefore fails.

*Judgment affirmed. All the Justices concur.*

---

[3] Johnson also argues that the trial court abused its discretion in not granting his motion for mistrial based on those improper statements. He has waived this argument, however, because he accepted the trial court's proposed curative instruction and did not renew any motion for mistrial. See *Bates*, 317 Ga. at 819 ("Having failed to object to the curative instruction and renew the motion for mistrial, Bates did not preserve the issue for appeal.")